UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JANE DOE,

    Plaintiff,

v.

MICHAEL O. BARBAZETTE, ET AL.

    Defendants.

Case No. 1:21-cv-1150-AJT/JFA

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

Defendants James Baumstark (Baumstark), Vincent Scianna (Scianna), Edwin C. Roessler (Roessler), and Fairfax County, Virginia (County) (collectively referred to herein as Supervisory Defendants), by counsel, have moved the Court to dismiss the action filed against them herein by the Plaintiff, Jane Doe (Doe), pursuant to Fed. R. Civ. P. 12(b)(6), and in support thereof, states the following:

## BACKGROUND

On December 16, 2021, Doe filed an Amended Complaint against Michael O. Barbazette (Barbazette), Jason J. Mardocco (Mardocco), Baumstark, Scianna, Roessler, and the County. Therein, Doe alleges that the Defendants are liable to her pursuant to 18 U.S.C. §1595 for violations of Chapter 77 of Part I of Title 18. (Am. Compl. ¶¶ 58-61.)[1] Doe's claims arise from her victimization by Hazel Marie Sanchez (Sanchez) in a sex trafficking organization between 2010 and 2015. (Am. Compl. ¶¶ 7-11, 17.)

---

[1] References to "Am. Compl." are to Doe's December 16, 2021, Amended Complaint, ECF No. 13.

Doe alleges that in October 2010 she came to the United States to work as an escort. (Am. Compl. ¶¶ 7, 10.) Unbeknownst to Doe, she was actually being recruited to work in a prostitution organization run by Sanchez. (Am. Compl. ¶ 8.) For approximately five years, Sanchez utilized Doe to provide commercial prostitution services in Fairfax County. (Am. Compl. ¶¶ 14-15.) Doe escaped the trafficking organization in April 2015. (Am. Compl. ¶ 17.) After her escape, Doe reported her trafficking to the authorities for the first time by reporting Sanchez to the Federal Bureau of Investigation (FBI). (Am. Compl. ¶ 46.) Doe did not report her circumstances to the Fairfax County Police Department (FCPD) at any time either before or after her escape. (Am. Compl. ¶ 46.) The FBI charged Sanchez with criminal offenses pursuant to 18 U.S.C. § 1952, and she was convicted in 2019. (Am. Compl. ¶ 49.)

According to Doe, during the FBI's investigation it analyzed a cell phone provided to them by Doe and discovered the telephone numbers of Barbazette and Mardocco. (Am. Compl. ¶¶ 47-48.) The FBI investigated both Barbazette and Mardocco, who were FCPD officers, for involvement in the Sanchez operation, but did not bring charges against either, instead referring the matter to the FCPD for follow up. (Am. Compl. ¶¶ 50-51.) Doe alleges that as a result of the FCPD follow up, Barbazette and Mardocco were permitted to resign from the FCPD. (Am. Compl. ¶ 52.)

Doe alleges the following with regard to Barbazette and Mardocco's alleged involvement in the Sanchez organization:

1. "On information and belief . . . for a period of years during Jane Doe's abuse by the Sanchez enterprise, defendants Barbazette and Mardocco . . . actively facilitated Sanchez's sex trafficking venture by providing it with protection intended to prevent

discovery of, and appropriate law enforcement intervention into, the Sanchez criminal enterprise." (Am. Compl. ¶ 25.)

2. "On information and belief, defendants Barbazette and Mardocco would tip off Sanchez when the FCPD would be conducting sting operations on sex trafficking ventures in the county, including the Sanchez enterprise." (Am. Compl. ¶ 26.)

3. "On information and belief, defendants Barbazette and Mardocco knew that Jane Doe had been trafficked for the purpose of being made to engage in commercial sex services by means of force, fraud or coercion." (Am. Compl. ¶ 27.)

4. "On information and belief, in consideration for defendants Barbazette and Mardocco's provision of protective services to Sanchez's trafficking ring, Sanchez made trafficked women, including Jane Doe, available to them for sexual services gratis." (Am. Compl. ¶ 28.)

Doe alleges that William Woolf (Woolf) was a detective assigned to the Northern Virginia Human Trafficking Task Force (Task Force), which was a federally funded task force committed to combatting sex trafficking, between 2013 and 2017. (Am. Compl. ¶ 18.) Doe alleges that Barbazette and Baumstark supervised Woolf while he worked sex trafficking cases, and that they referred to him at times as a "social worker" in a derogatory manner. (Am. Compl. ¶¶ 18-19.) Doe further alleges that in 2014-2015, Barbazette, while Woolf's direct supervisor, had a substantial interest in Woolf's work with sex trafficking victims, which Woolf felt was inappropriate. (Am. Compl. ¶ 21.) Doe contends that after Barbazette became interested in Woolf's work with sex trafficking victims, Woolf attempted to conduct a knock and talk to try to make contact with women who might be sex trafficking victims, however, no one answered the door. (Am. Compl. ¶ 23.)

Doe alleges that Woolf attempted to address his concerns regarding Barbazette with Baumstark, who offered no assistance. (Am. Compl. ¶ 29.) Doe contends that at an unspecified time Woolf notified Baumstark that individuals had reported to him that FCPD police officers were protecting and extorting sex from trafficking enterprises, and that Baumstark took no action, directing Woolf to ignore what he had been told. (Am. Compl. ¶ 30.)

In 2016, after Doe was no longer involved in the Sanchez operation, Doe alleges that Woolf requested that he be assigned a different supervisor, but that Baumstark refused to grant his request. (Am. Compl. ¶ 32.) Doe contends that Woolf was thereafter reassigned to the Major Crimes Division of the FCPD, where he investigated child pornography and child runaway cases. (Am. Compl. ¶¶ 34, 41.)

Also in 2016, Doe alleges that Scianna told Woolf that he was never to utter the words "human trafficking" again. (Am. Compl. ¶ 39.) Doe contends that "on information and belief" this was because Scianna had been instructed by unnamed individuals to "engage in irregular intimidation of Det. Woolf for the purpose of getting him to back off investigation into sex trafficking in Fairfax." (Am. Compl. ¶ 37.) In response, Woolf agreed to only work child pornography and child runaway cases. (Am. Compl. ¶ 41.) Doe alleges that thereafter Woolf received a phone call from an individual he recognized as Roessler, who was then the Chief of the FCPD, asking him whether he would "play ball." (Am. Compl. ¶ 42.) Doe contends "on information and belief," that the purpose for this phone call was to confirm that Woolf had agreed not to talk about sex trafficking anymore. (Am. Compl. ¶ 43.)

Doe's allegations against the County relate to Roessler's position as Chief of Police and policymaker for the County. Doe asserts that the County, through the FCPD and Roessler, sets policy on dealing with human trafficking in the county and in dealing with officers found to have

4

engaged in misconduct. (Am. Compl. ¶ 5.) Specifically, Doe alleges that the County's approach to sex trafficking, through Roessler, created a county custom, practice or usage of tolerating sex trafficking and suppressing investigation thereof. (Am. Compl. ¶ 1.) Doe contends that Roessler's actions implicate the County in a conspiracy that caused her injury. (Am. Compl. ¶¶ 54, 61.)

Counts I through III of the Amended Complaint are directed only to Barbazette and Mardocco and thus will not be addressed herein, nor will Count IV be addressed to the extent that it makes a claim against either Barbazette or Mardocco. As relevant to the instant motion, Doe contends in Count IV of the Amended Complaint that the Supervisory Defendants are liable to her pursuant to 18 U.S.C. § 1595 because they conspired with each other to violate 18 U.S.C. § 1594(b) of the Trafficking Victims Protection Reauthorization Act (TVPRA). Doe's claim against the Supervisory Defendants is a beneficiary liability claim.

## ARGUMENT

### I. LEGAL STANDARD

On a motion to dismiss under Rule 12(b)(6), the allegations of a complaint are to be liberally construed in favor of the plaintiff. *Conley v. Gibson,* 355 U.S. 41, 44 (1957); *Chapin v. Knight-Ridder, Inc.,* 993 F.2d 1087, 1092 (4th Cir. 1993). A court should only grant a Rule 12(b)(6) motion where it appears beyond a doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief. *Trulock v. Freeh,* 275 F.3d 391, 405 (4th Cir. 2001). The court must presume all "factual allegations in the complaint to be true and accord[ ] all reasonable inferences to the non-moving party." *Westmoreland v. Brown,* 883 F. Supp. 67, 70 (E.D. Va. 1995). The court, however, is not bound to accept as true "conclusory allegations regarding the legal effect of the facts alleged." *Labram v. Havel,*

5

43 F.3d 918, 921 (4th Cir. 1995). Indeed, the "presence ... of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support a finding of [liability]." *Young v. City of Mount Ranier,* 238 F.3d 567, 577 (4th Cir. 2001). Were this not the case, "Rule 12(b)(6) would serve no function, for its purpose is to provide a defendant with a mechanism for testing the legal sufficiency of the complaint." *Dist. 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.,* 609 F.2d 1083, 1086 (4th Cir. 1979).

**II.     THE TRAFFICKING VICTIMS PROTECTION ACT AND ITS PROGENY.**

The Trafficking Victims Protection Act (TVPA) was enacted to "combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims." Pub. L. No. 106-386 § 102(a), 114 Stat. 1464 (2000). The TVPA was made up of criminal offenses, which were codified at 18 U.S.C. §§ 1589 to 1594. The TVPRA, Pub. L. No. 108-193, 117 Stat. 2875 (2003), authorized a private cause of action for trafficked persons, 18 U.S.C. § 1595. The added statute provides that: "[a]n individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)." *Id.*

As relevant herein, 18 U.S.C. § 1594(b) is violated when an individual "conspires with another to violate section . . . 1589 . . ." of Title 18.2. 18 U.S.C. § 1589(a) prohibits the provision or obtaining of labor or services of a person by force, threat, or abuse, or by "any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or

6

physical restraint." 18 U.S.C. § 1589(b) provides that the statute is violated by anyone who "knowingly benefits, financially or by receiving anything of value, from participation in a venture" that violates 18 U.S.C. § 1589(a).

## III. COUNT IV OF THE AMENDED COMPLAINT AGAINST THE COUNTY MUST BE DISMISSED BECAUSE THE TVPRA DOES NOT CONTEMPLATE LIABILITY FOR MUNICIPAL POLICY OR CUSTOM.

Doe's allegations against the County relate to Roessler's position as Chief of Police and policymaker for the County, and her assertion that the County, through Roessler, sets policy on dealing with human trafficking in the County and in dealing with officers found to have engaged in misconduct. Doe alleges that the County's approach to sex trafficking created a custom, practice or usage of tolerating sex trafficking within Fairfax County and suppressing investigation of these crimes.

There is no legal authority for the proposition that the County could be liable to Doe pursuant to the TVPRA based on its policies or customs.[2] To the contrary, TVPRA caselaw is clear that civil liability is only imposed upon those who knowingly benefit from taking part in a sex trafficking venture. *See A.D. v. Wyndham Hotels and Resorts, Inc.*, No. 4:19CV120, 2020 WL 8674205 at *3 (E.D. Va. July 22, 2020) (holding that an 18 U.S.C. § 1595 defendant must "take part in the sex trafficking venture" and that "a failure to affirmatively prevent or inhibit sex trafficking does not constitute participation"); *Robertson v. Prince William Hosp.*, No.

---

[2] Allegations that a municipality's policies or customs result in damage to an injured plaintiff are applicable in the context of a Section 1983 claim. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). Doe has not asserted a Section 1983 claim in this case, and there is no legal basis upon which civil liability may attach to the County pursuant to 18 U.S.C. § 1595 for its policies or customs. Presumably, this is why there is not a single case in any federal court in the United States wherein the court has held that a municipal policy or custom claim can be pursued under the TVPRA.

1:11CV820, 2012 WL 1448101 at *5 (E.D. Va. April 25, 2012), *aff'd*, 486 F. App'x 375 (4th Cir. 2012) (dismissing TVPRA claim against a hospital because of the plaintiff's failure to "connect [it] with the alleged human trafficking offense" and because the plaintiff did not allege that the hospital "was part of, or participated in, the alleged human trafficking" as required by law).

As such, to the extent that Doe contends that the County's liability flows from its promulgation of policies and customs associated with the investigation of human trafficking in Fairfax County, her claim must be denied.

### IV. COUNT IV OF THE AMENDED COMPLAINT AGAINST BAUMSTARK, SCIANNA, ROESSLER AND THE COUNTY MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM.

In Count IV of the Amended Complaint it appears that Doe is attempting to assert that the Supervisory Defendants are liable to her under the theory that they conspired, in violation of 18 U.S.C. § 1594(b), to commit a violation of 18 U.S.C. § 1589(b).[3] A conspiracy to violate the TVPRA is established through proof of the following elements: "(i) a confederation of two or more persons by agreement or understanding; (ii) some unlawful or tortious act done in furtherance of the conspiracy or use of unlawful or tortious means to accomplish an act not in itself illegal; and (iii) actual legal damage resulting to the plaintiff." *Elat v. Ngoubene*, 993 F. Supp. 2d 497, 531 (D. Md. 2014) (citing *United States v. Nnaji*, 447 Fed. App'x 558, 560 (5th Cir. 2011). "To support a conspiracy claim, the complaint must contain 'enough factual matter

---

[3] The language Doe uses in Count IV is consistent with a common law conspiracy claim, however, such a claim would be barred by the statute of limitations. *See Godbolt v. Trinity Protective Servs.*, No. GJH-14-3546, 2016 WL 1070808, at *17 (D. Md. Mar. 14, 2016) (citing *EER Sys. Corp. v. Armfield, Harrison & Thomas Inc.*, 51 Va. Cir. 84, 96 (1999) for the proposition that the two-year statute of limitations for personal injury applies to common law conspiracy in Virginia). The Supervisory Defendants will thus treat Doe's claim as a statutory conspiracy claim.

8

(taken as true) to suggest that an agreement was made.'" *Baxla v. Chaudhri*, 225 F. Supp. 3d 588, 594 (E.D. Va. 2016), *quoting Lagayan v. Odeh*, 199 F. Supp. 3d 21, 30 (D.D.C. 2016). "An allegation of mere parallel conduct is not enough." *Id.*, *citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

A violation of 18 U.S.C. § 1589(b) requires proof that the Supervisory Defendants entered into a conspiracy to "knowingly benefit[], financially or by receiving anything of value, from participation in a venture" that violates 18 U.S.C. § 1589(a). In the context of Doe's claims, a violation of 18 U.S.C. § 1589(a) requires proof of a conspiracy to obtain Doe's labor or services by force, threat, or abuse, or by "any scheme, plan or pattern intended to cause [her] to believe that, if [she] did not perform such labor or services, [she] or another person would suffer serious harm or physical restraint." Importantly, 18 U.S.C. § 1589 claims contain an express scienter requirement. *Muchira v. Al-Rawaf*, 850 F.3d 605, 618 (4th Cir. 2017), *as amended* (Mar. 3, 2017). This requires proof that a defendant "*intended* to cause the victim" to believe that they would be harmed unless they acquiesced to the defendant. *Id. citing United States v. Dann*, 652 F.3d 1160, 1170 (9th Cir. 2011).

In *Wyndham Hotels and Resorts*, the court addressed a plaintiff's claims against the parent company of a hotel chain at which she was trafficked. The plaintiff contended that the defendant hotel company was liable to her pursuant to 18 U.S.C. §1595 under a beneficiary liability theory. The court held that a plaintiff in a beneficiary liability case must establish the following: "(1) the person or entity must 'knowingly benefit[], financially or by receiving anything of value,' (2) from participating in a venture, (3) that the 'person knew or should have known has engaged in an act in violation of [the TVPRA].'" *Id*. at *2, quoting *Doe S.W. v. Lorain-Elyria Motel, Inc.*, No 2:19CV1194, 2020 WL 1244192, at *5 (S.D. Ohio March 16,

9

2020). With regard to the second element, the court held that the phrase "participation in a venture" means "knowingly assisting, supporting, or facilitating" the sex trafficking venture. *Id.* at *3. In other words, according to the court, the defendant must "somehow 'take part' in the sex trafficking venture through some action that assists, furthers, or facilitates the sex trafficking." *Id.* Notably, "a failure to affirmatively prevent or inhibit sex trafficking does not constitute participation." *Id.*

In *United States ex rel. Fadlalla v. DynCorp Int'l LLC*, 402 F. Supp. 3d 162 (D. Md. 2019), the court considered the validity of claims against several small businesses who held subcontracts with a government contractor who was alleged to have engaged in fraud and violations of the TVPRA associated with contracts for linguists in Kuwait. In dismissing the plaintiff's claims against the subcontractors pursuant to 18 U.S.C. §1589, the court stated that the complaint "does not include a single allegation that any of these Defendants knew at all about [the contractor's] treatment of [plaintiffs] in Kuwait regarding their living conditions, passport confiscation, or other matters . . ." *Id.* at 196. As such, the plaintiff's claims against those entities could not survive the Rule 12(b) motion to dismiss. *Id.*

Here, Doe has not alleged facts sufficient to establish a claim against any of the Supervisory Defendants. As an initial matter, Doe's Amended Complaint is insufficient as a matter of law to establish that either Barbazette or Mardocco, the defendants with whom the Supervisory Defendants allegedly conspired, committed any violations of the TVPRA.[4] Doe's

---

[4] Barbazette and Mardocco have filed a Motion to Dismiss herein that details Doe's failure to state a claim against them for a violation of the TVPRA. The Supervisory Defendants rely on the arguments made therein for support of their claim that Doe has failed to establish a TVPRA violation at all with regard to any of the defendants, which would be required to establish a beneficiary liability claim.

beneficiary liability claim as to the Supervisory Defendants necessarily fails with that insufficiency. Furthermore, Doe does not allege a single fact that would give rise to the conclusion that any of the Supervisory Defendants knew Doe or were aware of Sanchez' trafficking operation in Fairfax County, much less her trafficking of Doe. Doe does not even allege that Woolf knew Sanchez or Doe, or that Woolf was aware of Sanchez' trafficking operation at all during his employment with the FCPD. Doe's failure to allege that any of the Supervisory Defendants were aware of her trafficking, or of Sanchez' operation, are fatal to her claims against them.

Furthermore, Doe does not allege that either Scianna or Roessler took any action related to this litigation during the time period that she was being trafficked by the Sanchez organization. The only allegations against Scianna or Roessler relate to actions that they took beginning in 2016, and Doe admits that she was no longer a trafficking victim as of April 2015. Regardless, none of the factual allegations against Scianna or Roessler are sufficient to state a claim. Indeed, none of the factual allegations in the Amended Complaint are sufficient to establish that any of the Supervisory Defendants knowingly benefitted from any participation in the venture to traffic Doe, which commands their dismissal from this case.

The Amended Complaint is similarly devoid of any allegation that Baumstark, Scianna or Roessler ever communicated with each other, or with Barbazette and Mardocco, regarding sex trafficking investigations within the County, much less that those conversations were specific to Doe's trafficking, evidenced an intent to violate the TVPRA, or resulted in the commission of an unlawful act in furtherance of a conspiracy. Even if Doe could allege facts that would support the conclusion that the Supervisory Defendants communicated regarding Sanchez' criminal

operation or Doe's victimization, which she cannot because no such activity took place, the doctrine of intracorporate immunity commands the dismissal of Count IV.

The doctrine of intracorporate immunity is "founded on the premise that proof of concerted action necessary to establish a conspiracy requires the involvement of at least two legally distinct persons or entities." *See Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 769 (1984); *Oksanen v. Page Mem'l Hosp.,* 945 F.2d 696, 702 (4th Cir. 1991). Under the doctrine, "no conspiracy may exist between a corporation and its employees, nor can agents of a corporation acting within the scope of their agency conspire together. Such actors are not legally separate persons for purposes of the conspiracy statute, but rather form part of a single entity, the corporation, which cannot conspire with itself." *See Phoenix Renovation Corp. v. Rodriguez,* 258 F. App'x 526, 539 (4th Cir. 2007). As such, because all of the Defendants were employees of Fairfax County and the FCPD during the time period of Doe's alleged conspiracy, as a matter of law, they cannot engage in a conspiracy, and Count IV must be dismissed.

V. **BAUMSTARK, SCIANNA, AND ROESSLER ARE ENTITLED TO QUALIFIED IMMUNITY.**

Qualified immunity also shields Baumstark, Scianna and Roessler from liability not only because Doe's allegations fail to establish a violation of her rights pursuant to 18 U.S.C. § 1595, as outlined *supra*, but also because the rights at issue are not firmly established. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Government officials engaged in the exercise of discretionary functions, being sued in their individual capacities, are entitled to the defense of qualified immunity. *Butz v. Economou*, 438 U.S. 478, 479 (1978). In *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), the U.S. Supreme Court held that government officials are immune from suit if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known" at the time of the conduct. "Officials have

qualified immunity either if the facts do not make out a violation of a constitutional right or if the right was not clearly established at the time." *Snider v. Seung Lee*, 584 F.3d 193, 198 (4th Cir. 2009) (citing *Pearson*, 555 U.S. at 230-239). "In other words, courts ask 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Gandy v. Robey*, 520 F. App'x 134, 140 (4th Cir. 2013), *quoting Saucier v. Katz*, 533 U.S. 194, 202 (2001).

At the time of the officer's actions, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). "[A]lthough the exact conduct at issue need not have been held to be unlawful in order for the law governing an officer's actions to be clearly established, the existing authority must be such that the unlawfulness of the conduct is manifest." *Beasley v. Brown*, No. 3:12CV6, 2013 WL 1288030, at *6 (E.D. Va. 2013), aff'd, 539 F. App'x 288 (4th Cir. 2013), *quoting Wilson v. Layne,* 141 F.3d 111, 113 (4th Cir. 1998), *aff'd*, 526 U.S. 119 (1999). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). "When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id*., *quoting Malley v. Briggs*, 475 U.S. 335, 341 (1986).

"The individual bringing suit against a public official bears the burden of clearly establishing the law [and corresponding rights] allegedly violated." *Mitchell v. Rice*, 954 F.2d 187, 190 (4th Cir. 1992). "A right is clearly established when it has been authoritatively decided by the Supreme Court, the appropriate United States Court of Appeals, or the highest court of the state in which the action arose." *Robinson v. Lioi*, 536 F. App'x 340, 346 (4th Cir. 2013), *citing Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999). "In deciding whether the right

13

alleged to have been violated was clearly established, the right must be defined 'at a high level of particularity.'" *Wilson v. Kittoe*, 337 F.3d 392, 403 (4th Cir. 2003), *quoting Edwards*, 178 F.3d at 250-51.

There is scant authority in the Fourth Circuit associated with alleged TVPRA violations, and few of the cases that do exist address the potential liability for individuals or entities beyond the individuals directly involved in the trafficking operation. There are no cases in the Fourth Circuit, or any other Circuit in the country, that would have put the Supervisory Defendants on notice that the manner in which they supervised an employee tasked with investigating human trafficking could constitute a violation of the TVPRA as to an individual, unknown to them, who was being trafficked. As such, they are entitled to qualified immunity and Count IV must be dismissed as to them.

## CONCLUSION

Based upon the foregoing, Baumstark, Scianna, Roessler and the County respectfully requests that the Court dismiss Count IV of the Complaint against them with prejudice.

Respectfully submitted,
JAMES BAUMSTARK
VINCENT SCIANNA
EDWIN C. ROESSLER
FAIRFAX COUNTY, VIRGINIA

**ELIZABETH D. TEARE**
**COUNTY ATTORNEY**

**By:** _____/s/_____
**Kimberly P. Baucom, Esquire**
**Senior Assistant County Attorney**
Virginia State Bar No. 44419
12000 Government Center Parkway
Suite 549
Fairfax, VA   22035-0064
(703) 324-2421
(703) 324-2665 fax
kimberly.baucom@fairfaxcounty.gov
*Counsel for James Baumstark, Vincent Scianna, Edwin C. Roessler, and Fairfax County, Virginia*

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of March, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a true copy of the foregoing to the following:

Victor M. Glasberg
Nickera S. Rodriguez
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, Virginia 22314
vmg@robinhoodesq.com
nsr@robinhoodesq.com
Counsel for Plaintiff

Heather K. Bardot
McGAVIN, BOYCE, BARDOT
THORSEN & KATZ, P.C.
9990 Fairfax Boulevard, Suite 400
Fairfax, Virginia 22030-2514
(703) 385-1000
(703) 385-1555 fax
hbardot@mbbtklaw.com
Counsel for Defendants Barbazette and Mardocco

_____/s/_____
Kimberly P. Baucom