UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

(Alexandria Division)

| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 1:21-cv-1150 (AJT/JFA) |
| | ) | |
| MICHAEL O. BARBAZETTE, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

---

MEMORANDUM IN OPPOSITION TO MOTIONS
TO DISMISS OF DEFENDANTS BARBAZETTE ,
MARDOCCO, BAUMSTARK, SCIANNA AND ROESSLER

---

Victor M. Glasberg, #16184
Nickera S. Rodriguez, #95952
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA  22314
703.684.1100 / Fax: 703.684.1104
vmg@robinhoodesq.com
nsr@robinhoodesq.com

Counsel for Plaintiff

Table of Contents

Overview of Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.     Preliminary Issues Applicable to All Individual Defendants . . . . . . . . . . . . . . . . . . . . . . 2

     A. Pleading Requirements Under the Federal Rules . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     B.   The TVPRA's Remedial Purpose Requires Broad
         Interpretation of the Conduct it Proscribes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

II.    Counts I and III State Claims Against Defendants Barbazette and Mardocco . . . . . . . . . 9

     A. The Allegations Against Defendants Barbazette and Mardocco . . . . . . . . . . . . . . . 10

          1.  As to Defendant Barbazette . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

          2.  As to Defendant Mardocco . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

     B. Count I States Claims Under 18 U.S.C. §1589 (a) and (b) . . . . . . . . . . . . . . . . . . . . 12

     C. Count III States a Claim Under §1593A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

III.   Doe States a Conspiracy Claim Against all the Individual Defendants . . . . . . . . . . . . . 17

     A. The Factual Allegations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

          1.  Defendants Scianna and Roessler . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

          2.  Defendant Baumstark. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

     B. The Defendants Conspired to Cover Up Fairfax Sex Trafficking . . . . . . . . . . . . . . 20

IV.   No Defendant is Entitled to Qualified Immunity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Ignoring well-pleaded averments or the reasonable implications of such averments appearing in plaintiff Jane Doe's amended complaint, with one exception, defendants Michael Barbazette, Jason Mardocco, James Baumstark, Vincent Scianna and Edwin Roessler rely on a host of settled, but inapposite, legal principles in an attempt to dismiss this lawsuit.[1]  For the following reasons, their motions should be denied.


Overview of Claim

Jane Doe was trafficked to the United States and forced to work as a prostitute, mostly in Fairfax County, Virginia.  At least some of the defendants, at the time officers within the Fairfax County Police Department ("FCPD")[2], provided security to the trafficking ring that ensnared Jane Doe, secured sexual services from trafficked women, and may also have extorted money from the ring's leadership.  Both during and after Jane Doe's trafficking, high ranking officers within the department, including the then-chief of police, conspired to cover up aspects of sex trafficking in Fairfax and the complicity of county police officers in the work of the trafficking ring, thereby becoming themselves complicit in its work.

---

[1]The exception is with regard to Count II, which was mis-pled by counsel to refer to defendants Barbazette and Mardocco's having had sex with plaintiff Doe rather than with women, possibly including Doe, victimized by the Sanchez ring that ensnared Doe. For the reasons set forth herein, this makes no difference on any liability issue at bar.  However, since any defendant is entitled to rely on what has been pled, Doe stipulates to the dismissal of Count II without prejudice to its immediate refiling with "women, possibly including Jane Doe, victimized by the Sanchez ring," substituted for "Jane Doe."

[2]At all relevant times,  Michael O. Barbazette and Jason J. Mardocco were supervisory police officers in the FCPD, James Baumstark was a captain, Vincent Scianna was a lieutenant, and Edwin Roessler was Fairfax County's Chief of Police.

Based on these allegations, Doe addresses the following claims against these defendants:

In Count I, a claim against defendants Barbazette and Mardocco under 18 U.S.C. § 1595 for having provided protective services for the Sanchez sex trafficking ring that ensnared Doe, thereby knowingly facilitating Jane Doe's forced labor in violation of 18 U.S.C. § 1589.

In Count III, a claim against defendants Barbazette and Mardocco under 18 U.S.C. § 1595 for having knowingly benefitted, sexually if not financially, by participating in the trafficking and prostitution of Jane Doe in violation of 18 U.S.C. § 1593A.[3]

In Count IV, a claim against all named defendants under 18 U.S.C. §1595 for conspiring, and committing overt acts in furtherance of the conspiracy, to provide protection to the Sanchez ring and knowingly subvert efforts to investigate and prosecute the traffickers, thereby affirmatively facilitating the continued victimization of Jane Doe (and other victims) by the Sanchez enterprise, in violation of 18 U.S.C. §1594(b).[4]

I. Preliminary Issues Applicable to All Individual Defendants

    A. Pleading Requirements Under the Federal Rules

Doe respectfully represents that the principal – and fatal – failing of all the individual defendants' motions to dismiss is their avoidance or minimization of three principles applicable to the adjudication of such motions:

---

[3]Discovery will reveal whether these defendants also extorted money from Sanchez for their protection of the sex trafficking venture.

[4] Count IV also includes a claim of conspiracy against defendants Barbazette and Mardocco to secure illicit sexual services from the Sanchez ring.

(1)     It is a matter of common sense and common experience that unlawful, unprofessional and unethical activity is typically not broadcast to the world, but is hidden and must be uncovered.  In litigation, the uncovering happens in discovery.  An allegation of secretive activity supported by cogent inferences is not "implausible" merely by reason of having been candidly made on information and belief rather than on personal knowledge.[5]  "The requirement of non-conclusory factual detail at the pleading stage is tempered by the recognition that a plaintiff may only have so much information at his disposal at the outset."  *Robertson v. Sea Pines Real Est. Companies, Inc*., 679 F.3d 278, 291 (4th Cir. 2012).  The *Iqbal/Twombly* plausibility standard does not prevent a plaintiff from alleging facts on information and belief. *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (citing *Arista Record LLC v. Doe*, 604 F.3d 110, 120 (2d Cir. 2010)).  An allegation made on information and belief is sufficient "where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Id*.

(2)     Claims of conspiracy – *i.e.* secretive agreement and concerted action to accomplish an improper goal – are quintessentially examples of claims that routinely require discovery to be fleshed out.

---

[5]It is worth noting, as well, that an allegation is not "implausible" merely by reason of being highly unusual.  Police involvement in, or protection of, sex trafficking is as unusual as it is regrettable  – but these things happen. *See, e.g.,* Exhibit 1 filed herewith. *See also* <https://www.nbcwashington.com/news/local/ex-dc-cop-to-be-sentenced-for-pimping-teen-girls/68655/ > (D.C. police officer convicted of running child prostitution ring); <https://www.washingtonpost.com/local/crime/dc-officer-arrested-in-prostitution-case/2013/12/11/d35a8f18-6260-11e3-91b3-f2bb96304e34_story.html >; <https://www.nytimes.com/2021/12/14/nyregion/brewster-police-sex-trafficking.html >. In every civil case, the question facing a court on a motion to dismiss is not how unusual the plaintiff's claim is, but whether enough facts and context have been presented to render the stated claim plausible to the point of affording an opportunity for discovery to proceed,

> By their very nature, conspiracies are carried out in secret, so evidence is usually sparse at the pleading stage.  But the lack of evidence does not result in a heightened pleading standard. "[I]t is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *** "Under *Twombly*, all plaintiff needed to allege was a plausible account of a conspiracy." When assessing a complaint, the Supreme Court asks courts "to apply our 'judicial experience and common sense.'"  The Court "must be realistic ... in light of what information is available to a plaintiff at the time a complaint is filed."  Put differently, "[c]omplaints just launch the case."

*Hill v. Cook Cty.*, 463 F. Supp. 3d 820, 840 (N.D. Ill. 2020) (internal citations omitted).

> While there must be sufficient evidence from which a reasonable jury can infer an agreement "without speculation and conjecture", a plaintiff need not present direct evidence of the agreement. "[T]he agreement that rests at the heart of a conspiracy is seldom susceptible of direct proof: more often than not such an agreement must be inferred from all the circumstances."
> *Sanchez v. Foley*,  972 F.3d 1, 12 (1st Cir. 2020) (internal citations omitted).[6]

---

[6] These principles apply even at the summary judgment and trial phases of a lawsuit. "[T]he elements of a conspiracy are rarely established through means other than circumstantial evidence, and summary judgment is only warranted when the evidence is so one-sided as to leave no room for any reasonable difference of opinion as to how the case should be decided. ***  The court must be convinced that the evidence presented is insufficient to support any reasonable inference of a conspiracy." *Solomon v. Petray*, 795 F.3d 777, 789–90 (8th Cir. 2015) (summary judgment denied).  "[T]he question of the existence of a conspiracy to deprive the plaintiff of his constitutional rights should not be taken from the jury if there is a possibility the jury could infer from the circumstances a 'meeting of the minds' or understanding among the conspirators to achieve the conspiracy's aims."  *Holmes v. Slay,* 895 F.3d 993, 1001 (8th Cir. 2018) (citation omitted); *see also United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1541 (9th Cir. 1989), *cert. denied*, 493 U.S. 809 (1989).

While a conspiracy claim cannot be made up of "rank speculation and conjecture," *Penley*

*v. McDowell Cty. Bd. of Educ.*, 876 F.3d 646, 658 (4th Cir. 2017) (no conspiracy absent

conspiratorial communications), a conspiracy plaintiff need not allege "a meeting of the minds"

among all the defendants, only circumstances that permit the reasonable inference that each

member of the alleged conspiracy "shared the same conspiratorial objective." *Id*.  Nor is it

"necessary to prove that each participant in a conspiracy know the exact parameters of the plan,

[only that] they must at least share the general conspiratorial objective." *Fonda v. Gray*, 707

F.2d 435, 438 (9th Cir. 1983), cited with approval in *Hinkle v. City of Clarksburg, W.Va.*, 81

F.3d 416, 421 (4th Cir. 1996).

In assessing the merits of Doe's claims, the Court is to "draw on its judicial experience

and common sense," *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).  Why might a

police officer harass the principal detective investigating sex trafficking, and then have his phone

number found by the FBI on the phone used by sex workers for their clients?  Why might *any*

officer's phone number be found on such phone?  Why might police supervisors fail to react to

reports that police officers were providing protection to a sex trafficking ring?  Why might

supervisors threaten a detective to abandon his sex trafficking investigation or face dire

consequences?  Why might a police chief call the detective to satisfy himself that the threat had

the desired effect?   Why might police officers being investigated by the Public Corruption

Division of the FBI be permitted quietly to resign by their chief?  A witness – Det. William

Woolf  – is available to address most of these matters as a matter of his direct personal

knowledge.  The  issue facing the Court is whether its "judicial experience and common sense"

-5-

require that discovery into these claims go forward.

(3)     Reasonable inferences may defeat a motion to dismiss where direct evidence is yet unavailable.  Circumstantial evidence, admissible in court, is nothing more than evidence giving rise to a reasonable inference.  At the opening of a lawsuit, when direct evidence of a plaintiff's claim has not yet been discovered, a plaintiff can present averments raising inferences sufficient to render the claim plausible.

In deciding whether the facts alleged by the plaintiff are enough to "nudge [the plaintiff's claim(s)] across the line from conceivable to plausible," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), courts are to consider both the well-pleaded allegations and the reasonable inferences that may be drawn from those allegations. *United States ex rel. Cafasso v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011).  A plaintiff need not plead specific evidentiary facts supporting each element of a cause of action; indeed, a plaintiff's failure to "prove the case on the pleadings" does not warrant dismissal.  *Robertson*, 679 F.3d at 291.  While a complaint must present "more than a sheer possibility that a defendant has acted unlawfully," the plausibility standard "is not akin to a 'probability requirement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The pleading must "raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct.]" *Twombly,* 550 U.S. at 556.  Courts are to "draw on [their] judicial experience and common sense … [and consider] obvious alternative explanations" in determining whether a given inference is reasonable.  *Iqbal*, 556 U.S. at 679, 682-83.

*Swanson v. Citibank, N.A.,* 614 F.3d 400 (7th Cir. 2010) is an instructive case on the issue of the sufficiency of inferences.  In this case, a Black woman sued a bank and a home appraisal service for racial discrimination and fraud, alleging their concerted effort to prevent her

from securing a home mortgage. She presented no direct evidence of racial animus; indeed, the

loan officer who she claimed raised a host of questionable obstacles to her securing her mortgage

showed her a photograph of his wife and son who were, he said, "part African American." *Id*. at

403.  Given the absence of direct evidence of racial discrimination, the district court dismissed

the case.  The Seventh Circuit reversed the dismissal of the housing discrimination claim. The

court noted that while the Supreme Court had properly acted in *Iqbal* and *Twombly* because

"[t]oo much chaff was moving ahead with the wheat," *id*. at 405, Swanson had pleaded that the

defendants "knew her race and she accuses them of discriminating against her in the specific

business transaction that they had with her," *id*. at 406, giving rise to a plausible claim given the

hoops she had been given to jump through.  The court noted:

> When it comes to proving her case, she will need to come up with
> more evidence than the mere fact that PCI (through Lanier) placed
> a far lower value on her house than Midwest Valuations did. All
> we hold now is that she is entitled to take the next step in this
> litigation.

*Id*. at 406-07 (internal citation omitted).  These principles apply here word for word.

The issue at bar, then, is whether, given the well-pleaded averments in the amended

complaint, and with due regard to what Doe could know and what she could not know without

discovery, Doe has presented this Court with enough information on the basis of which to find

that she has plausibly linked each of the individual defendants to the alleged protection of the

Sanchez ring that victimized her.  If she has done this, she is entitled to proceed.

B.   The TVPRA's Remedial Purpose Requires Broad
     Interpretation of the Conduct it Proscribes

The Trafficking Victims Protection Act (TVPA) was passed by Congress for the purpose of combating trafficking in persons, deemed "a contemporary manifestation of slavery whose victims are predominantly women and children."  Pub. L. No. 106-386 § 102(a), 114 Stat. 1464 (2000).   Its dual goals were to "ensure just and effective punishment of traffickers, and to protect their victims."  *Id*.  In 2003, Congress passed the Trafficking Victims Protection Reauthorization Act ("TVPRA") providing civil remedies for individuals victimized by any TVPA violation.  Under 18 U.S.C. §1595(a):

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

This language reflects congressional intent broadly to enable trafficking victims to seek damages not only from individuals who participate in trafficking ventures but also from those who knowingly receive a benefit – "financially or by receiving anything of value" – from those ventures.  *See M.A. v. Wyndham Hotels & Resorts, Inc*., 425 F. Supp. 3d 959, 964 (S.D. Ohio 2019) ("The text [of § 1595] evidences Congress's intent to broaden the behavior that can form the basis of civil liability to participation in ventures where the defendant 'knew or should have known' that the venture was involved in sex trafficking").  Courts have routinely held that this law is to be given an expansive reading.  *Noble v. Weinstein*, 335 F. Supp. 3d 504, 515 (S.D.N.Y. 2018) (remedial nature of § 1595 "requires broad interpretation"); *United States v. Jungers*, 702 F.3d 1066, 1070 (8th Cir. 2013) (TVPA language does not lend itself to a "restrictive

-9-

interpretation"); *United States v. Estrada-Tepal*, 57 F. Supp. 3d 164, 167 (E.D.N.Y. 2014) (18

U.S.C. § 1591 "unambiguously covers a broad range of conduct"); *see generally Peyton v. Rowe*,

391 U.S. 54, 65 (1968) (noting that "remedial statutes should be liberally construed").  It is

against this broad interpretive backdrop that the arguments of all the individual defendants must

be assessed.


    II.  <u>Counts I and III State Claims Against Defendants Barbazette and Mardocco</u>

Counts I and III state claims against only two defendants, former police officers

Barbazette and Mardocco, for having protected as well as secured services from the Sanchez ring

that ensnared Doe.  A number of the central claims against them are presented on information

and belief.  It would be odd were it otherwise; police officers do not openly ordinarily engage in

unlawful behavior.  After comprising telephone numbers surfaced on the cell phone Doe had

used in her work and given to the FBI, and in light of apparent police protection of the ring,

investigation into defendant Barbazette's and Mardocco's involvement with the Sanchez ring

was transferred to the FBI's Public Corruption Division (*N.B.*), and then forwarded to the FCPD,

apparently as a matter of allocation of resources and institutional priorities.  At FCPD, it was

swept under the rug. To date, the only information to be had detailing these defendants' actual

dealings with the Sanchez ring lies with the FBI and possibly the FCPD.  What Doe knows, she

has averred in her complaint.[7]

---

[7] Doe cannot present unqualified averments in violation of FED. R. CIV. P. 11 simply to
avoid dismissal.  Prior to filing the complaint, the undersigned spoke at length with an FBI
representative about this case.  What was learned appears in ¶¶50-51 of the complaint. When
discovery begins, counsel will serve subpoenas *duces tecum* on the FBI and on FCPD expected
to yield information sufficient to transform statements made "on information and belief" into

A.  The Allegations Against Defendants Barbazette and Mardocco

1.  As to Defendant Barbazette

As to defendant Barbazette, the "plausibility" of his implication in and protection of the Sanchez ring emerges from the following allegations against him.   All paragraph references below are to the amended complaint.

19.  His disparagement of trafficking victims.

21.  His hostility to Det. William Woolf's trafficking work.

21.  His subsequent substantial interest in joining Det. Woolf on victim interviews.

21.  His request for a trafficked woman's telephone number.

21.  His recitation to Det. Woolf of personal information indicative of an inappropriate interest in women involved in commercial sex.[8]

22, 23, 46.  Dating from defendant Barbazette's interest in sex trafficking victims, the emergence of new difficulties for Det. Woolf in his investigative work, including failures in "knock-and-talk" encounters that had routinely succeeded before then  (¶¶22-23), coupled with Doe's advice to the FBI that FCPD officers were complicit in the work of the Sanchez ring and that she did not know whom she could trust within FCPD (¶46).

––––––––––––––––––––

unqualified assertions.  Should the court have concerns whether Doe's claims have been "nudge[d] across the line from conceivable to plausible," *Twombly,* 550 U.S. at 570, Doe would request preliminary discovery from the FBI and FCPD relevant to the adjudication of the motions at bar.  For the reasons discussed below, however, Doe respectfully submits expedited discovery is unnecessary for the adjudication of the pending motions.

[8]Defendant Barbazette has not requested a specification of this information, which was intentionally excluded from the complaint, a public record.  *See* n.4 at 5, *supra.*   It will be provided off the record on request, or at the direction of the Court on or off the record.

-11-

24. Defendant Barbazette's hostility toward Det. Woolf and his work, his denial of routine investigative tools and overtime work (not paid by the county) to Det. Woolf, and his demanding daily reports on all his activities.

33.  Defendant Barbazette's ordering Det. Woolf not to open any new trafficking cases and simply close out his old ones.

48.  The FBI's finding defendant Barbazette listed as a customer of the Sanchez ring on the trafficked women's cell phone provided to the FBI by Doe.

50.  The FBI's transferring the matter of defendant Barbazette's involvement with the Sanchez ring from its Child exploitation and Human Trafficking Task Force to its Public Corruption Division.

52.  Promptly following referral of the matter by the Public Corruption Division to FCPD for appropriate follow up, the quiet resignation of defendant Barbazette.

## 2.  As to Defendant Mardocco

47.  Jane Doe's allegations were initially investigated by the F.B.I.'s Human Trafficking Task Force.  In its investigation, the F.B.I. used a cell phone handed over by Jane Doe, who had shared it with other women in connection with their commercial sex work. The cell phone permitted access to the telephone numbers of many clients of the commercial sex ring.

48.  On information and belief, the telephone number of defendant Mardocco, was among those found on the phone provided by Jane Doe.

50. The FBI referred the Barbazette and Mardocco matter to its Public Corruption Division, which on information and belief investigated defendant Mardocco as well as defendant Barbazette for involvement in the Sanchez ring.

-12-

52.  The Public Corruption Division having referred the matter back to FCPD, defendant Mardocco resigned his position pursuant to FCPD practice of permitting accused officers quietly to resign.

The issue being plausibility, how plausible is it that a county police officer would legitimately have his phone number on a cell phone used by sex workers?[9]  How plausible is it for the FBI to have referred a sex trafficking inquiry to its Public Corruption Unit absent reason to believe a public official was engaged in corruption?  How plausible is it for the FBI to have referred such public official to his local police department for appropriate action, absent the official's apparent involvement in unlawful behavior?  And how plausible is it that following the FBI referral, two colleagues implicated in a sex trafficking ring would suddenly and quietly have resigned from the police force ostensibly investigating them unless they had something to hide?  Doe respectfully represents that at the very best for defendants Barbazette and Mardocco, she is entitled – at the very least – to discovery to flesh out the regrettably plausible allegations she has made to the Court about these defendants.

### B.  Count I States Claims Under 18 U.S.C. §1589 (a) and (b)

Defendants Barbazette and Mardocco do not question that a violation of §1589 is actionable under §1595, nor do they deny that Ms. Sanchez ran a sex trafficking venture of which

---

[9]Det. Woolf was the county's sex trafficking interdiction officer.  Defendant Mardocco has not proffered, and on information and belief cannot proffer, that he had a law enforcement reason justifying the appearance of his phone number on the phone used by the Sanchez sex workers.

-13-

Doe was a victim.  They claim, rather, an inability to comprehend which of §1589's two prohibitions they are accused of violating.  They are accused of violating both.

Section 1589 criminalizes knowingly engaging in two types of behavior:  (a) providing or obtaining the labor or services of a person by means of an itemized list of prohibited coercive acts; or (b) knowingly benefitting, financially or by receiving anything of value, from participation in a venture providing or obtaining labor or services by any of the means described in subsection (a).   The phrase "labor or services" in § 1589 extends to forced sexual acts. *United States v. Kaufman*, 546 F.3d 1242, 1259–63 (10th Cir. 2008).

Doe claims that Barbazette and Mardocco provided protective services for the Sanchez sex trafficking venture and in return received (at a minimum) free sexual favors from women under Sanchez's control, knowing or in reckless disregard of the fact that the venture was engaged in trafficking women for commercial sex.  This claim states a claim under subsection (a) of §1591 – obtaining services – and subsection (b) – benefitting from an illicit venture.

Without citation to legal authority, Barbazette and Mardocco argue that in order to be held liable under §1589 they themselves had to engage in the types of coercive or threatening conduct proscribed by § 1589(a), conduct that is concededly absent from Ms. Doe's allegations against them.  ECF 38 at 7-8.  But this narrow interpretation of §1589 is misplaced.  The statute imposes liability on whoever "knowingly provides or obtains" services of a person who has been subjected to one or more of the statute's enumerated coercive or threatening acts.  If Congress had wanted to limit liability only to those persons who personally engaged in the coercive behavior, it simply could have made it unlawful to provide or obtain the services of a person through the use of such practices without the term "knowingly."  (One can hardly

-14-

"unknowingly" use force, threats of force or serious harm, physical restraint or threats of same, or abuse or threatened abuse of law or legal process.) Judicial interpretation of these terms consistent with Congress' express purpose in stamping out sex trafficking can be found in decisions construing §§ 1589 and 1591(a). *Samuel v. Signal Int'l L.L.C.*, 2015 WL 12765986, at *4 (E.D. Tex. Jan. 26, 2015), rep. and rec. adopted, 2015 WL 12765987 (E.D. Tex. Mar. 31, 2015) (In a §1589 case, "the jury must find that the defendant knew that the [forced labor] circumstance existed"; *United States v. Todd*, 627 F.3d 329, 336 (9th Cir. 2010) (Section 1591 "allows for a conviction even where the defendant did not personally use force, fraud or coercion" (Smith, J. concurring).

The amended complaint supports, as well, a claim under § 1589(b), a provision that proscribes knowingly benefiting "financially or by receiving anything of value, from participation" in a proscribed venture.  Defendants' argument that § 1589 requires only financial benefit, ECF 38 at 9, is flatly wrong, ignoring as it does both the statutory language and judicial interpretation thereof.

"The preeminent canon of statutory interpretation requires us to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.' Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (internal citation omitted).  Courts interpreting the "anything of value" language in §1591 have given it an "extremely broad" interpretation consistent with the language Congress used and its stated desire to stamp out sex trafficking.  *United States v. Cook*, 782 F.3d 983, 989 (8th Cir. 2015) (defendant's receipt of sexual photographs and participation in sex acts could constitute "things of value under [ Section

-15-

1591 ]"); *United States v. Rivera*, 2012 WL 6589526 (M.D. Fla. Dec. 18, 2012) (procurement of sex acts constituted benefit to mentor of juvenile initiated into cult); *Bridges v. Poe*, 487 F. Supp. 3d 1250, 1262 (N.D. Ala. 2020) (chief of police received "something of value" where he was "able to watch (sexual) abuse displayed on video monitors.")

Defendants' authority does not state a contrary rule; their cases simply present circumstances where the sole gain alleged was financial. *Doe v. Mindgeek USA Inc.*, 2021 U.S. Dist. LEXIS 176833 (C.D. Cal. Sep. 3, 2021) (claim against company providing internet platform where videos of sex trafficking victims were posted); *H.H. v. G6 Hospitality, LLC*, 2019 WL 6682152 (S.D. Ohio Dec. 6, 2019) (claim against company owning hotels where women were trafficked).  Like many commercial sex cases, neither case presented a claim that the corporate defendants benefited other than financially.  There was no occasion for the court to rule on the scope of the phrase "or anything of value" that appears in §§1589 and 1591, and the fact that solely financial gain was identified in both is thus inconsequential here.

Barbazette and Mardocco also argue that the amended complaint sets forth no facts to suggest that they knowingly participated in the Sanchez sex trafficking venture.  ECF 38 at 8. They invite the Court to overlook their phone numbers being identified[10] on the telephone Doe gave to the FBI as the means whereby the women trafficked by Sanchez communicated with their clients, the FBI's referral of both of them to its Official Corruption Unit, the referral of the resulting investigation from Official Corruption Unit to the FCPD, and the speedy and quiet resignation of both men from the police force – but the Court should not accept their invitation.

---

[10]Defendant Mardocco's on information and belief, pending discovery.

-16-

With such smoke, the Court can fairly conclude that discovery may well reveal a fire.[11]


C.  Count III States a Claim Under §1593A

Section 1593A gives rise to civil liability under §1595 against "whoever knowingly

benefits, financially or by receiving anything of value, from participation in a venture which has

engaged in any act in violation of this chapter, knowing or in reckless disregard of the fact that

the venture has engaged in such violation."

The sole argument Barbazette and Mardocco make to support their motion to dismiss

Count III is that it is based on a statutory provision  "which is not capable of being violated,"

ECF 38 at 7, fn. 3.  The argument, such as it is, possibly reflects these defendants' contention

that "benefits" is limited solely to financial benefits, whereas Count III claims Barbazette and

Mardocco are liable under this section because they knowingly benefited "sexually, if not

financially" from their role in providing protective services to the Sanchez trafficking operation.

If defendants' financial-only reading of "benefits" is correct, the Court will dismiss Count III.

But they are wrong, as set forth at 14-15, *supra*.[12]

---

[11]Given the plague of human trafficking in Northern Virginia as elsewhere  – *see* Exhibit
2  – and the (prior) status of defendants Barbazette and Mardocco as police officers, these
defendants should not be heard to argue on a motion to dismiss that they were "merely" visiting
prostitutes, with no inkling that the women were trafficked.  Section 1595 requires that a
defendant "knew or should have known" that a TVPRA violation was occurring.  If these
defendants seek to raise this defense, the place to do it is at trial.

[12] These defendants cannot, on rebuttal, come forward with new grounds to contest Count
III. An argument raised for the first time in a reply brief will ordinarily "not be considered."
*Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006) (citing
*United States v. Williams*, 445 F.3d 724, 736 n. 6 (4th Cir. 2006)); *see also Constr. Eng'g
Consultants, Inc. v. Steel Sols., Inc.*, 2009 WL 10733733, at *8 (E.D. Va. May 13, 2009)
(quoting *Bland v. Va. State Univ.*, 2007 U.S. Dist. LEXIS 8776, 2007 WL 446122, at *4 (E.D.

III.  Doe States a Conspiracy Claim Against all the Individual Defendants

As to all the individual defendants, Doe alleges, at ¶53, that:

> [O]ver a period of years, including but not limited to the years in which Jane Doe was being victimized by the Sanchez trafficking enterprise, defendants Barbazette, Mardocco, Baumstark, Scianna, and Roessler, and on information and belief others, engaged in a conspiracy to obstruct the investigation and exposure of sex trafficking taking place within Fairfax County, notwithstanding the county's receipt of millions of dollars in federal funds to identify and prosecute traffickers.  By their actions set forth above, each of these defendants thereby affirmatively facilitated the ongoing victimization of Jane Doe and other victims of the Sanchez enterprise until Jane Doe undertook to blow the whistle to the FBI. Defendants also conspired to cover up the fact that Fairfax County police officers were actively participating in, and benefitting sexually if not financially from, the work of a local sex trafficking ring.

A.  The Factual Allegations

The averments against defendants Barbazette and Mardocco supporting the conspiracy claim against them have been set forth above.  As against the other individual defendants, Doe alleges as follows:

1.  Defendants Scianna and Roessler

Doe's amended complaint alleges as follows regarding defendants Scianna and Roessler:

36, 37.  In March or April 2016, defendant Scianna, then an FCPD lieutenant, conducted an aggressive investigatory interview of Det. Woolf regarding his having flown to a sex trafficking witness interview – something Det. Woolf had previously received authority to do. At the time of this interview, Lt. Scianna had no supervisory authority over Det. Woolf.  Nor was

_____

Va. 2007)).

-18-

Lt. Scianna part of the Internal Affairs Department that investigates claimed police misconduct.

38, 39.  Lt. Scianna told Det. Woolf that if he continued to insist he had been given permission to fly to meet his witness, he would be branded a liar and his career at FCPD and in law enforcement would be over.  This portion of the interview was recorded by Lt. Scianna. Lt. Scianna then turned off his recorder and said the following to Det. Woolf:

> You know what this is really about, don't you.  If you keep your mouth shut and don't utter the words "human trafficking"  again, all this will disappear, everything will go away and all the paperwork will disappear. You have six kids.  You have to think about them.  If you don't cooperate we'll make sure you never work in law enforcement again.

Lt. Scianna told Det. Woolf that he would give him time to think about what he wanted to do.

37.  Given Lt. Scianna's irregular interrogation of Det. Woolf, its content and its consequences, including the subsequent call to Det. Woolf from Police Chief Roessler (*see* below at 42,43,44), Doe has alleged on information and belief that Lt. Scianna was specially designated, with the knowledge and concurrence of Chief Roessler, to get Det. Woolf to back off investigation into sex trafficking in Fairfax.  This is another instance in which discovery may be deemed necessary by the Court to establish the evidentiary sufficiency of the claims at issue.[13]

41.  The following day, Det. Woolf, overwhelmed by the prospect of losing his job in law enforcement and fearful of Lt. Scianna's threat, informed Lt. Scianna that he would no longer talk about trafficking.  He told Lt. Scianna: "I'm on board."

---

[13]Doe would welcome threshold depositions of Det. Woolf and defendants.

42, 43, 44.  Two days after confirming to Lt. Scianna that he was "on board," Det. Woolf received a telephone call from then-Police Chief Roessler.  Det. Woolf had spoken with Chief Roessler on numerous occasions, and readily identified him.  Chief Roessler said: "I'm on my way to a meeting.  I need to make sure you're willing to play ball."  At the time of Chief Roessler's call, Det. Woolf had no matters pending before Chief Roessler.  There existed nothing in relation to which he might have been asked if he was "willing to play ball," other than confirmation of his advice to Lt. Scianna that he was indeed willing no longer to speak of trafficking.  On information and belief, Chief Roessler was calling to confirm that the information he had received to this effect from Lt. Scianna was accurate.  Det. Woolf answered: "yes sir," and Chief Roessler hung up the phone.

52.  FCPD did not deal with defendants Barbazette and Mardocco as criminal suspects referred by the F.B.I.  Rather, FCPD swept its officers' involvement in Fairfax sex trafficking under the rug and in accordance with an established departmental practice of permitting accused officers quietly to resign, permitted them quietly to resign from the department, retaining their pensions.  On information and belief, this was with the knowledge and approval of then-Chief Roessler.[14]

### 2.  Defendant Baumstark

As against defendant Baumstark, Doe alleges as follows:

19.  He joined defendant Barbazette and others in disparaging Det. Woolf's work on sex trafficking.

---

[14] It is commonplace, to say nothing of plausible, for a police chief to be involved in authorizing resignations under a cloud.  Discovery would shed light on Chief Roessler's role.

29.  In response to Det. Woolf's complaints about defendant Barbazette's unusual and disruptive actions compromising his work on sex trafficking in Fairfax County, defendant Baumstark offered Det. Woolf no assistance; rather he ordered Det. Woolf not to say anything to anyone about it.  Cpt. Baumstark told Det. Woolf: "I'm a life guard and you are far off shore drowning, and I'm not going to try to save you," and "You are on an island by yourself and left to fend for your self."

30.  In response to Det. Woolf's telling him that trafficking victims who trusted him reported to him that FCPD police officers were extorting sex from the trafficking enterprises they were also protecting, defendant Baumstark, expressing no interest, directed Det. Woolf to forget it and ignore what he had been told.

Here too, Doe respectfully submits that given the broader context of defendant Baumstark's comments and actions set forth in the complaint, she has presented a plausible claim that defendant Baumstark was complicit over time in obstructing proper law enforcement work designed to terminate sex trafficking, thereby contributing to Doe's ongoing victimization.

B.  The Defendants Conspired to Cover Up Fairfax Sex Trafficking

Section 1594 of the TVPA makes it unlawful to conspire to violate specific provisions of the Act.  Section 1594(b) makes it unlawful to conspire to violate § 1589, and § 1594(c) makes it unlawful to conspire to violate §1591.[15]  Section 1591(d) prohibits "obstruct[ing], or attempt[ing]

---

[15] The undersigned notes that while the heading of this count inadvertently refers to §1594(b) rather than §1594 generally, the factual allegations against the supervisory defendants state and support a claim for conspiracy under §1594(c) to obstruct or interfere with the enforcement of §1591, which focuses on forced commercial sex as opposed to forced labor generally, covered by § 1594(b).  Ms. Doe can amend Count IV as required.

to obstruct, or in any way interfere[ing] with or prevent[ing] the enforcement of this section."

Beyond the opening overview of conspiracy law appearing at 3-6, *supra,* Doe respectfully submits that her burden is to produce "evidence [that] must allow the jury to infer that the conspirators entered into a joint enterprise and were aware of its general nature and extent." *Akhtar v. Vitamin Herbal Homeopathic Ctr. Inc*., 2021 WL 7186030, at \*11 (E.D.N.Y. Apr. 30, 2021); *see United States v. Svoboda*, 347 F.3d 471, 476-77 (2d Cir. 2003) (conspiracy can be inferred from circumstantial evidence). Direct evidence of an explicit agreement is not required. *Sanchez v. Foley*, 972 F.3d at 12.

The types of circumstantial evidence supporting a permissible inference of one's participation in a conspiracy are varied. It "may be inferred from, for example, [his] presence at critical stages of the conspiracy that could not be explained by happenstance, ... a lack of surprise when discussing the conspiracy with others, ... [or] evidence that the defendant participated in conversations directly related to the substance of the conspiracy." *United States v. Ulbricht*, 31 F. Supp. 3d 540, 552 (S.D.N.Y. 2014). And "[a] defendant's participation in a single transaction can suffice to sustain a charge of knowing participation in an existing conspiracy." *United States v. Zabare*, 871 F.2d 282, 287 (2d Cir. 1989).

Members of a conspiracy may serve different roles. *See United States v. Garcia–Torres*, 280 F.3d 1, 4 (1st Cir. 2002) ("[A] drug conspiracy may involve ancillary functions (*e.g*., accounting, communications, strong-arm enforcement), and one who joined with drug dealers to perform one of those functions could be deemed a drug conspirator"); *United States v. Burgos*, 94 F.3d 849, 859 (4th Cir. 1996) ("a variety of conduct, apart from selling narcotics, can constitute participation in a conspiracy sufficient to sustain a conviction").

The sufficiency of Ms. Doe's allegations against each of the individual defendants must be measured against these principles, together with an application of common sense and the benefit of all reasonable inferences.  Doing so pushes her amended complaint well across the line separating the merely speculative and the plausibile.

The supervisory defendants – Baumstark, Scianna and Roessler – argue that the conspiracy claim against them "requires proof that [they] entered into a conspiracy to "knowingly benefit[], financially or by receiving anything of value, from participation in [the Sanchez sex trafficking] venture."  ECF 41 at 9.  This argument reflects a misreading of the allegations against them.  The amended complaint charges only defendants Barbazette and Mardocco with receiving benefits in exchange for providing protection services to the Sanchez venture.  The supervisory defendants are charged, rather, with conspiring to conceal the involvement of these Fairfax police officers and to impede, obstruct and interfere with investigative efforts by Detective Woolf that threatened to reveal the venture that victimized Doe.

The TVPA authorities cited by the supervisory defendants in support of their motion are inapposite to the claims against them.  Each of the cases they cite involves claims charging the defendants with violating substantive provisions of the TVPA.  None of the cases raised claims of conspiracy under §1594, let alone a conspiracy to "obstruct[], attempt[] to obstruct, or in any way interfere[] with" efforts to investigate commercial sex trafficking as proscribed by §1591.

These defendants also argue that the doctrine of intra-corporate immunity bars Doe's claims against them, since they were all members of FCPD.  ECF 41 at 12.  This argument fails for two reasons.  First, Doe alleges that Barbazette and Mardocco were conspiring with Sanchez

-23-

to provide protection services for her venture, and that the supervisory defendants were aware –
or in the words of §1595's civil remedial provision "should have known" – of Barbazette's and
Mardocco's conduct, impeded the investigation thereof, and covered up their misdeeds.[16]  The
presence of Sanchez – a stranger to FCPD – renders the intra-corporate immunity doctrine
inapplicable.

Second, the intra-corporate immunity doctrine has exceptions. It is generally inapplicable
where a co-conspirator "possesses a personal stake independent of his relationship to the
corporation." *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 353 (4th Cir. 2013).  It is not
applicable where the actions at issue were not authorized by the corporate entity – here, Fairfax
County.[17]  The decision in *Middleton v. Baltimore City Police Dep't.*, 2022 WL 268765 (D. Md.
Jan. 28, 2022) is illustrative.  There, the plaintiff sued officers of the Baltimore Police
Department, among other things for conspiring to cover up her unlawful arrest and the use of
excessive force against her by one of the officers, in violation of 42 U.S.C. § 1985(3). On the
defendants' motion to dismiss the conspiracy claim on the grounds of intra-corporate immunity,
the court, finding that the complaint showed that they had a personal stake in the conspiracy and
that the alleged conduct was not sanctioned by the Baltimore Police Department, denied the

---

[16]This does not suggest that these defendants turned a blind eye to prostitution.  As the
complaint recites, ¶19, Det. Woolf was derided as a "social worker" for viewing sex workers as
victims rather than profit-seeking criminals.

[17]Doe has stipulated to the dismissal of her claim against the county, which was
predicated, pursuant to the single-act principle of *Pembauer v.City of Cincinnati*, 475 U.S. 469
(1986),  on defendant Roessler's soliciting and receiving confirmation that Det. Woolf would
abandon his anti-sex trafficking work.  Other than by reason of the legal consequences of these
actions of its police chief and policy-maker for law enforcement purposes, Doe has not
contended that Fairfax County ever authorized or protected sex trafficking as a county policy,
and stipulates that it does not.

motion to dismiss.  *Id*. at *35.  Courts routinely decline to apply the intra-corporate doctrine to conspiracy claims against rogue law enforcement officers.  *Bright v. City of Killeen, Texas*, 532 F. Supp. 3d 389, 402 (W.D. Tex. 2021) (police conspiracy to cover up actions during police raid); *Pena v. Ortiz*, 521 F. Supp. 3d 747, 752-53 (N.D. Ill. 2021) (conspiracy to falsify police reports); *Heyward v. Tyner*, 2018 WL 1391434, at *5 (D.S.C. Mar. 20, 2018) (same); *Kenley v. District of Columbia*, 83 F. Supp. 3d 20, 34 (D.D.C. 2015) (conspiracy falsely to charge plaintiff with assault on officer in order cover up officers' misconduct).  *See* also Exhibit 1.

Here, the amended complaint identifies specific conduct by each of the supervisory defendants evidencing an effort to cover up both the presence of sex trafficking in Fairfax County and the involvement of department officers in this activity.  Why else would the supervisory defendants caution and then threaten Det. Woolf to secure his retreat from sex trafficking in the county?  Why would they have ignored advice from sex workers that FCPD officers were providing protection to the traffickers?  And why would FCPD have permitted defendants Barbazette and Mardocco quietly to resign, after they were referred for investigation by the FBI's Public Corruption Unit following Doe's whistleblowing on the Sanchez operation? That all these things happened, as alleged by Doe and with admissible evidence thereof simply awaiting discovery.  These circumstances bespeak private agendas at odds with any cognizable institutional agenda of defendants' employer, Fairfax County.  The intra-corporate conspiracy defense is unavailable to them.

All individual defendants make much, finally, of their contention that the interference Det. Woolf experienced with his investigations into sex trafficking occurred only after Doe's 2015 escape from the Sanchez operation.  *See* ECF 38 at 13, ECF 41 at 11.  From this they argue

that such interference could not have been related to Doe's victimization by Sanchez. Defendants may elect to press such an argument on summary judgment.  But it is not well taken on a motion to dismiss.

Defendants Barbazette's and Mardocco's involvement with Sanchez began before Doe escaped, as evidenced by their contact information appearing on the trafficked women's cell phone Doe took with her when she escaped and provided to the FBI.  The Sanchez operation continued into 2018, when it was dismantled following Doe's whistle-blowing.  Exhibit 3.  The complaint alleges, at ¶21-22, that Det. Woolf experienced difficulties with defendant Barbazette, and with his investigative work into sex trafficking, as early as the period 2014-15, during which time Doe remained in thrall to Sanchez (through April 2015; Comp. ¶17).  In that same period, Det. Woolf reported defendant Barbazette's unusual and disruptive actions and orders to desist with sex trafficking investigations to defendant Baumstark. He also advised defendant Baumstark that trafficking victims who trusted him had reported that FCPD officers were extorting sex from the trafficking enterprises they were also protecting.  Defendant Baumstark's response was a combination of indifference, implied threat, and direction to forget what he had been told.  *Id.* at ¶¶29-30.

Doe respectfully submits that given the principles governing adjudication of motions to dismiss, reviewed at 2-7, *supra*, the Court cannot conclude, as defendants insist, that as a matter of law it is implausible to infer that the investigatory efforts of Det. Woolf  – FCPD's sex trafficking detective  – would have yielded the demise of the Sanchez venture while Doe was still being victimized by it.  Indeed, such timing issues do not appear as matters of law, but as matters of fact.  And it remains to be learned what communications were had between

defendants Barbazette and Mardocco and supervisory FCPD personnel in the period before Det.

Woolf began encountering police roadblocks to his investigation of sex trafficking in the county.

Given the well-pleaded allegations implicating police brass in grossly improper interference with

investigation into sex trafficking, Doe respectfully submits that this is grist for discovery, not for

an adverse ruling as a matter of law.


IV.   No Defendant is Entitled to Qualified Immunity

> * * *
>
> There has never been a § 1983 case accusing welfare officials of
> selling foster children into slavery; it does not follow that if such a
> case arose the officials would be immune from damages liability
> because no previous case had found liability in such
> circumstances.

*K.H. ex rel. Murphy v. Morgan*, 914 F.2d 846, 851 (7th Cir. 1990) (Posner, J.), cited with

approval in *Pinder v. Johnson*, 54 F.3d 1169, 1177 (4th Cir. 1995).

* * *

The supervisory defendants also argue that they are entitled to qualified immunity for

their obstructing investigation into, and covering up involvement of police personnel in, sex

trafficking in Fairfax County.  ECF 41 at 11-14.[18]   The Court should dismiss this defense out of

hand, given the well-pleaded allegations in the complaint, the law discussed above, and common

sense.

---

[18]In an unusual turn of events in a police misconduct case  – but an understandable one  –
defendants Barbazette and Mardocco have, properly, not bothered mounting this defense.

<u>Conclusion</u>

For these reasons, the motions to dismiss defendants Barbazette, Mardocco, Baumstark,

Scianna and Roessler should be denied, except that Count II may be dismissed without prejudice

to its being repled with "women, possibly including Jane Doe, victimized by the Sanchez ring,"

substituted for "Jane Doe."

Respectfully submitted,

JANE DOE,

By counsel

Dated:  April 22, 2022

Counsel for Plaintiff:

<u>//s// Victor M. Glasberg</u>
Victor M. Glasberg, #16184
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA  22314
703.684.1100 / Fax: 703.684.1104
<u>vmg@robinhoodesq.com</u>
**Jane Doe\Pleadings\2022-0422-OppMTDBarbazetteEtAl**

<u>//s// Nickera S. Rodriguez</u>
Nickera S. Rodriguez, #95952
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA  22314
703.684.1100 / Fax: 703.684.1104
<u>nsr@robinhoodesq.com</u>

-28-

Certificate of Service

I, Victor M. Glasberg, hereby certify that on April 22, 2022, I filed the above
Memorandum in Opposition to Motions to Dismiss of Defendants Barbazette, Mardocco,
Baumstark, Sciatta and Roessler with the clerk of the court using the ECF system.

//s// Victor M. Glasberg
Victor M. Glasberg, #16184
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA  22314
703.684.1100 / Fax: 703.684.1104
vmg@robinhoodesq.com

Counsel for plaintiff

-29-