UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

(Alexandria Division)

| | |
|---|---|
| JANE DOE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case #1:21-cv-1150 (AJT/JFA) |
| ) | |
| FAIRFAX POLICE OFFICER #1, *et al.* ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM IN OPPOSITION TO MOTIONS TO EXCLUDE
EXPERT TESTIMONY OF KIMBERLY MEHLMAN-OROZCO, PH.D.

Introduction

In various motions *in limine,* all defendants have challenged plaintiff Jane Doe's right to call Kimberly Mehlman-Orozco, Ph.D., as an expert on sex trafficking. Defendants Barbazette and Mardocco have devoted a separate motion to this end as well, to which the supervisory defendants have subscribed in full. In briefs addressing other matters *in limine* before the Court, Doe has touched on aspects of why Dr. Mehlman-Orozco's evidence should be admitted at trial. Here, Doe addresses the motion of defendants Barbazette and Mardocco directed solely at the proposed testimony of Dr. Mehlman-Orozco, as well as commenting on an additional point raised by the supervisors in their brief filed five working days before this response is being filed.

One of this country's leading researchers and students of sex trafficking, Dr. Mehlman-Orozco has testified as an expert witness in state and federal cases involving sex trafficking, and has never been disqualified as an expert. She has written a well-received book on the subject – Hidden in Plain Sight (2017) – and trained law enforcement personnel on the subject. Her

*curriculum vitae* is attached hereto as Exhibit 1, and a copy of her book – produced to defense counsel months ago – will be submitted to chambers for review. Doe offers her testimony on two issues: (1) educating the lay jury on the existence, nature and harsh realities of sex trafficking, and (2) whether defendant law enforcement officers "knew or should have known," 18 U.S.C. §1595(a), ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ were being trafficked within the meaning of the TVPRA.[1] This testimony will be offered based on her formal education, her professional study of sex traffickers and their victims, her extensive experience in the field, her peer-reviewed and published research on these topics, her hours-long consultations with Doe, and her review of relevant documents generated in this litigation. She submitted two expert's reports in the case, and was deposed at length by defense counsel.

I. The Court's Gatekeeping Function for Expert Testimony

When the admissibility of an expert's proposed trial testimony is challenged, the trial court is to assess the proposed testimony in light of the Supreme Court's analysis in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). First, the Court must determine whether the expert is qualified by knowledge,

---

[1] Under the TVPRA a defendant can be civilly sued for, *inter alia:* (1) "receiving anything of value" (including sex) from a trafficking venture *knowing* it is the product of coercion (18 U.S.C. §1589(a) and §1591(a)(2); and (2) obstructing, interfering or preventing the enforcement of the TVPRA (18 U.S.C. §1591(d) if the defendant "*knew or should have known*" that the venture was operating in violation of the TVPRA) (emphasis added). The supervisors have been sued, *inter alia,* under 18 U.S.C. §§1591(d) and 1595 (ECF 61, Count II at ¶57) for obstructing, interfering or preventing enforcement of the TVPRA, on the theory that they "knew or should have known" that Sanchez was running a sex trafficking ring. (They have also been sued for conspiracy, not here at issue.) The supervisory defendants' memorandum conflates the various requirements of these sections of the TVPRA.

skill, experience, training or education to render an opinion.  If the witness is qualified, the Court must determine whether the expert's opinions are reliable.  If the opinions are reliable, the court must determine whether the expert's testimony will assist the trier of fact to understand the evidence or to determine a fact in issue.

The expert witness remains subject to cross-examination, of course.  As the Fourth Circuit has observed:

> [T]he trial court's role as a gatekeeper is not intended to serve as a replacement for the adversary system, and consequently, the rejection of expert testimony is the exception rather than the rule. Indeed, *Daubert* itself stressed the importance of the conventional devices of vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof  (rather than wholesale exclusion by the trial judge) as the traditional and appropriate means of attacking shaky but admissible evidence.

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prod. Liab. Litig.* (No II) MDL 2502, 892 F.3d 624, 631 (4th Cir. 2018).  Defendants are free to try through cross-examination and argument to convince the jury that Dr. Mehlman-Orozco's testimony is "shaky."  But excluding her testimony wholesale is not available to them, as her proposed testimony meets the requisite criteria.

### A. Dr. Mehlman-Orozco's Qualifications

As evidenced by her *curriculum vitae,* Dr. Mehlman-Orozco is one of the country's leading experts on sex trafficking.  She has participated extensively at conferences and been an invited speaker on the issue; she has conducted training for law enforcement personnel on recognizing and dealing with sex trafficking; she has written numerous articles on the subject and published a book used in law enforcement training on sex trafficking. Defendants raise no

specific issue regarding Dr. Mehlman-Orozco's qualifications, and Doe respectfully submits that the Court should find that they satisfy *Daubert*'s qualifications requirement.

### B. The Focus of Dr. Mehlman-Orozco's Testimony

Defendants Barbazette and Mardocco advance the argument that Dr. Mehlman-Orozco's knowledge is "solely about human trafficking globally and nationally" and that she has no knowledge "about any aspect of the case beyond what Doe told her." ECF 293 at 5. This argument is factually inaccurate and legally insufficient. Factually, Dr. Mehlman-Orozco's two reports, copies attached as Exhibits 2, are replete with references to information sources other than Doe, including Sanchez's admissions, FBI documentation arising out of its investigation of Sanchez, and documentation arising out of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Legally, defendants' arguments are contrary to settled law. Expert testimony that presents what defendants minimize as "general principles" is appropriate and admissible if it bears on the issues in the case at hand. "[R]ule [702] accordingly recognizes that an expert on the stand may give a dissertation or exposition of scientific or other principles relevant to the case, leaving the trier of fact to apply them to the facts." Fed.R.Evid. 702, Advisory Comm. Notes to 1972 Proposed Rules.

The Advisory Committee Notes on the 2000 post-*Daubert* Amendments to Rule 702 are directly applicable here:

> [I]t might also be important in some cases for an expert to educate the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case. For example, experts might instruct the factfinder on the principles of

> thermodynamics, or bloodclotting, or on how financial markets respond to corporate reports, without ever knowing about or trying to tie their testimony into the facts of the case. The amendment does not alter the venerable practice of using expert testimony to educate the factfinder on general principles. For this kind of generalized testimony, Rule 702 simply requires that: (1) the expert be qualified; (2) the testimony address a subject matter on which the factfinder can be assisted by an expert; (3) the testimony be reliable; and (4) the testimony "fit" the facts of the case.

Dr. Mehlman-Orozco's testimony will serve this function, offering evidence that given the available factual information, Doe's experience points to her having been trafficked and not having worked for years as a voluntary sex worker.[2] Lay jurors are almost certainly ignorant of the multi-billion dollar online sex trafficking business, featuring ads for and reviews of women on sale for sex in a manner similar to promotions and evaluations of cars or washing machines. *See, e.g.,* Exhibit 3, featuring ads for Doe and other women made available by Sanchez and reviews of sexual services as well. Dr. Mehlman-Orozco can explain how the empirical study of sex trafficking has identified a number of reliable factors that bear directly upon the issue of whether the experience of a given sex worker is consistent with voluntary or coerced sex work. Her testimony regarding the factors indicative of sex trafficking will assist the jury to assess the factual evidence presented by Doe, whose account defendants challenge as mendacious.[3]

 In support of their argument, defendants cite *Eline v. Town of Ocean City*, 7 F.4th 214 (4th Cir. 2021), and *United States v. Ancient Coin Collectors Guild*, 899 F.3d 295, 319 (4th Cir.

---

[2]As is always the case with experts, if the jury does not accept the factual predicate supporting the expert's assessment, the jury will disregard the expert's opinions.

[3]Dr. Mehlman-Orozco will not be asked and will not testify whether Doe was in fact trafficked. That is for the jury. She will elaborate on the extent to which Doe's evidence points directly to what research and studies have identified as indicia of trafficking.

2018). These cases stand for the unremarkable proposition that expert testimony regarding general background matters untethered to an issue to be established in the litigation does not satisfy the requirements of Fed.R.Evid. 702. In *Eline,* expert testimony regarding national attitudes toward public nudity was held irrelevant to a lawsuit focused on local community attitudes. In *Coin Collectors Guild,* a coin expert had nothing to say about the fifteen coins at issue, just generic information about certain categories of ancient coins.[4] By contrast, Dr. Mehlman-Orozco's testimony, reflecting evidence developed in this case, will bear directly upon defense claims that Doe was a voluntary sex worker and that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Both factual issues must be decided by the jury in rendering its verdict. Dr. Mehlman-Orozco's testimony not "too general."

Barbazette and Mardocco also argue that Dr. Mehlman-Orozco's testimony is irrelevant because she has no knowledge whether ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, both of which are prerequisites for having known that Doe was a trafficking victim." ECF 293 at 5. But the premise for this argument, *i.e.*, that liability attaches only if ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, is based on an incorrect interpretation of the law previously rejected by this Court in defendants' motions to dismiss. ECF 60, 70. Under 18 U.S.C. §1595(a), a TVPRA victim may recover damages

---

[4] Defendants also cite other cases that do not avail them. In *Lipitor Mktg v. Pfizer, Inc.*, 892 F.3d 624, 640 (4th Cir. 2018) expert evidence was admitted on the relationship between a specific dose of medication and resulting harm, although disallowed on a broad, non-dose-by-dose analysis that did not bear on the matters at issue. And in *United States v. Ali,* 735 F.3d 176, 192 (4th Cir. 2013), a drug prosecution, expert evidence was disallowed expressly because the expert had been identified too late, the court adding that the proposed evidence was irrelevant because all it showed was that the controlled substance for which the defendants were arrested were mixed with uncontrolled material. These cases shed no light here.

from a beneficiary of a sex trafficking venture on proof that the beneficiary knew or should have known that the *venture* violated the TVPRA. Civil liability can attach to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Dr. Mehlman-Orozco will testify regarding circumstances that would permit a jury to assess whether these ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.[5] Barbazette and Mardocco's efforts to apply a narrower, legally incorrect standard to this testimony should be rejected.

The testimony offered by Dr. Mehlman-Orozco is usefully assessed in light of the expert testimony deemed admissible in *United States v. Young*, 916 F.3d 368 (4th Cir. 2019). In that prosecution for attempting to support a terrorist organization in Libya, the government called a social scientist as an expert witness regarding violent extremist movements claiming inspiration from Islam, white separatists and the neo-Nazi movement, the radicalization processes for such groups, and the Libyan civil war. The witness also explained points of overlap between Nazism and radical Islamism, with examples of individuals who had subscribed to both philosophies. After being convicted, the defendant appealed, challenging the trial court's admission of the expert's testimony.

The Fourth Circuit court permitted the testimony, approving the social science-based methodology used by the witness. Like Dr. Mehlman-Orozco, the expert in *Young* conducted his research "through a comparative method," focusing on primary sources, then comparing his

---

[5] Dr. Mehlman-Orozco's testimony will not address defendant Mardocco's training on sex trafficking. Her only commentary on Barbazette's training will track the testimony of defendant Barbazette and Det. William Woolf regarding his training and receipt of reports on Det. Woolf's sex trafficking work.

conclusions against secondary sources and "events on the ground." *Id.* at 380. This method was recognized as one generally employed in the social sciences: "collect[ing] as much information as possible, then balancing each new incoming piece of information against the body of information you've built to that point." *Id.* 380–81. The Fourth Circuit also ruled that the expert's testimony was relevant and met Rule 702's requirement that the expert's specialized knowledge help the trier of fact understand the evidence or determine a fact in issue. *Id.* at 381.

A similar result was reached in *Nat'l Ass'n for Advancement of Colored People, Inc. v. City of Myrtle Beach*, 504 F. Supp. 3d 513 (D.S.C. 2020), holding: "Social Science testimony is valid when an expert with sufficient credentials identifies his methodology as one generally accepted in the social sciences." *Id.* at 518. In this race discrimination case, plaintiffs proffered the expert testimony of a sociologist to prove intentional discrimination in relation to certain law enforcement actions during "Black Bike Week." Focusing on the demographics of the Myrtle Beach area, the expert also reviewed sociological research on racial attitudes and stereotypes. He testified that the traffic plan approved and enforce by Myrtle Beach for the "Black Bike Week" was properly evaluated in light of an established body of research on how dominant groups – here, Myrtle Beach whites – undertook to minimize the presence of disfavored ones – here, African-Americans. Overruling the defendants objection that these opinions "concern the general history of discrimination against people of color rather than the intent of the specific decision-making body in the present case," *id*. at 517, the court permitted the testimony:

> At the *Daubert* hearing, Dr. Gallagher testified that he will explain sociological research on racial stereotyping and discrimination and opine that specific, documented types of racial bias influenced the City's treatment of Black Bike Week. In his report and his

> testimony, Dr. Gallagher identified specific actions by alleged decision-makers that he opines indicate racial bias. This testimony logically advances the central argument of the plaintiffs' case.

*Id.* at 517-18. The court also ruled that this expert testimony would be helpful to the jury because the sociological indicators associated with racial stereotyping and discrimination are not necessarily within the comprehension of laypersons. *Id.* at 518. By way of example, the court noted the expert's testimony on the concept of "hypervisibility":

> "Hypervisibility" is likely a foreign concept to those outside of the sociology community. Therefore, expert testimony will be helpful in explaining plaintiffs' theory that the concept of "hypervisibility" shows bias in the City's decision-making process. Accordingly, the Court finds that Dr. Gallagher's proffered testimony is relevant and will be helpful to the trier of fact.

*id.*

Dr. Mehlman-Orozco's proferred testimony is of a piece with the testimony of the experts in *Young* and *City of Myrtle Beach*. Her methodology of utilizing quantitative studies and qualitative data mirrors that accepted by both courts. (*See* Section C on reliability, *infra*). And for reasons similar to those in *Young* and *City of Myrtle Beach*, her testimony will provide meaningful background and context for events that transpired during the relevant time period when Doe was being trafficked by Sanchez, and will explain terms relevant to trafficking that are not commonly used or understood by individuals outside the field of human trafficking research and enforcement.

### C. Dr. Mehlman-Orozco's Testimony is Reliable

Defendants Barbazette and Mardocco argue that Dr. Mehlman-Orozco's testimony is unreliable. This contention must be assessed in light of *Kumho Tire Co. v. Carmichael*, 526 U.S.

137 (1999), which, extending the Court's gatekeeping role to all expert testimony, confirmed that a district court enjoys broad latitude in determining reliability. *Id.* at 141-42.

Dr. Mehlman-Orozco's *curriculum vitae*, reports, and deposition describe how her training has guided her approach in developing her opinions at issue:

* She is trained in survey methodology as well as the collection and analysis of data, and uses these methods in approaching the subject matter on which she provides opinions;

* She has kept current on research methods;

* She uses quantitative data in her study of issues related to prevalence, prediction and causation as indicators of human trafficking. She uses quantitative studies rather than relying solely on qualitative information based on interviews to inform her opinions. She also utilizes qualitative data to inform her opinions, as evidenced by the books she has written on the topic of human trafficking.

* Her expertise includes focus on the fact that human trafficking involves human relationships requiring qualitative as well as quantitative research. She has thus used the Michigan Law Center Human Trafficking data base to set up interviews with victims as well as persons convicted of sex trafficking in order to understand how they recruit and control their victims.

* She has published material addressing sex trafficking, including:

* A peer-reviewed publication "Projected Heroes and Self-Perceived Manipulators: Understanding the Duplicitous Identities of Human Traffickers" published in TRENDS IN ORGANIZED CRIME (2017). This article was later accepted for

      presentation at the 2018 American Society of Criminology conference in Atlanta, Georgia.

\*	A peer-reviewed publication "Safe Harbor Legislation for Juvenile Victims of Sex Trafficking: A Myopic View of Improvements in Practice," published in THE JOURNAL OF SOCIAL INCLUSION (2015), guest edited by the Director of the Program on Human Trafficking and Modern Slavery at the Kennedy School of Government at Harvard University.

\*	Her book HIDDEN IN PLAIN SIGHT: AMERICA'S SLAVES OF THE NEW MILLENNIUM (2017), a book that examines trends in sex and labor trafficking in the United States and is used as a manual to train law enforcement.

Doe respectfully submits that Dr. Mehlman-Orozco's education, background, research, analysis and methods reflect the intellectual rigor required to meet *Daubert's* vigorous peer-review standards. Her opinion testimony is tied scientifically to qualitative research and experience through interviews with victims, traffickers and sex workers, and based as well on quantitative methodology reflecting her own research and her studies of published research by colleagues in the field.

      D.  <u>Dr. Mehlman-Orozco's Proposed Testimony is Relevant</u>

To be relevant, proposed expert testimony must logically advance a material aspect of the case," *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 884 n. 2 (10th Cir. 2005), and be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute," *Daubert*, 509 U.S. at 591. In assessing whether testimony will assist the trier of fact,

district courts consider several factors, including whether the testimony "is within the juror's common knowledge and experience," and "whether it will usurp the juror's role of evaluating a witness's credibility." *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1123 (10th Cir. 2006) (footnote omitted). Pursuant to Rule 702, courts must conduct a "common-sense inquiry" into whether a juror would be able to understand certain evidence without specialized knowledge.

  Dr. Mehlman-Orozco's testimony will be relevant in that it will assist the jury in understanding matters outside the realm of common knowledge and experience. Dr. Mehlman-Orozco is expected to testify about aspects of human sex trafficking that are not known to the general public, astonishing and offensive, and in many ways at odds with the manner in which sex workers are portrayed in the media, *e.g.,* Julia Roberts in *Pretty Woman,* or other glamorizations suggesting consenting relationships and victimless sex work. Uneducated jurors may also well feel as did defendant Barbazette in telling Det. Woolf "Why do you care? She's only a prostitute." ECF 265-1 at 347:7-9. This is commonplace, certainly within the non-law enforcement community. As Dr. Mehlman-Orozco (and Det. Woolf) will testify, it is woefully inaccurate and unfair. And it is unduly prejudicial to Doe, who needs a fair chance to been seen as a victim, not simply a "pretty woman" in charge of her clients, schedule, actions, and earnings.

  This evidence is relevant to Doe's claim of victimization by Sanchez – a claim that must be demonstrated since it is not conceded by the defense. Dr. Mehlman-Orozco will help the jury fairly to judge the account of a woman who will have admitted that she would have been willing to engage in commercial sex on a voluntary, consensual basis with men she liked. Dr. Mehlman-Orozco's testimony is critical on this point.

-12-

<u>Conclusion</u>

The jury will have to decide whether Doe was trafficked or not, and whether the evidence is sufficient to support the conclusion that Barbazette and/or Mardocco "knew or should have known," 18 U.S.C. §1595(a), of Sanchez's trafficking venture. Dr. Mehlman-Orozco's evidence bears significantly on these issues, and should be allowed. Doe respectfully submits that the Court should reach such conclusion based on the briefing on defendants' motions. Should the Court have remaining doubts about the appropriateness of this evidence testimony, the Court should convene a timely hearing at which Dr. Mehlman-Orozco will present her qualifications, methods and opinions to the court in fuller detail.

    Respectfully submitted,

    JANE DOE,

    By counsel

Dated:   December 6, 2022

Counsel for Plaintiff:

//s// Victor M. Glasberg
Victor M. Glasberg, #16184
Nickera S. Rodriguez, #95952
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA  22314
703.684.1100 / Fax: 703.684.1104
vmg@robinhoodesq.com
nsr@robinhoodesq.com

**DoeJane\Pleadings\2022-1206-OppMExcludeOrozcoTestimony**

<u>Certificate of Service</u>

 I, Victor M. Glasberg, hereby certify that on this 6th day of December 2022, I electronically filed the foregoing Memorandum in Opposition to Motions to Exclude Expert Testimony of Kimberly Mehlman-Orozco, Ph.D. with the clerk of the court.

                //s// Victor M. Glasberg
                Victor M. Glasberg, #16184
                Victor M. Glasberg & Associates
                121 S. Columbus Street
                Alexandria, VA  22314
                703.684.1100 / Fax: 703.684.1104
                vmg@robinhoodesq.com

                Counsel for Plaintiff