IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JANE DOE,                                       )
                                                )
                    Plaintiff,                  )
          v.                                    )
                                                )          Case No.: 1:21-cv-1150 (AJT/JFA)
FAIRFAX POLICE OFFICER #1, *et al.*,            )
                                                )
                    Defendants.                 )          **UNDER SEAL**
_____            )

## MEMORANDUM OPINION AND ORDER

In this action under the Trafficking Victims Protection Reauthorization Act ("TVPRA"),

28 U.S.C. §§ 1589 *et seq.*, Jane Doe alleges that ███████████████████████████████

███████████████████████████████████████████████████████████████████████████████

██████████ Second Amend. Compl. ("SAC") [Doc. No. 61]. Defendants are former[1] Fairfax

County Police Department ("FCPD") officers of varying rank. *Id.* at ¶ 3.

Before the Court are two Motions for Summary Judgment.[2] The first Motion, [Doc. No.

196], is from Defendants James Baumstark, Edwin Roessler, and Vincent Scianna (the

"Supervisory Defendants"). The second Motion, [Doc. No. 199], is from Defendants Michael

Barbazette and Jason Mardocco. Upon consideration of the Second Amended Complaint, the

---

[1] While not a material issue, the record is unclear whether Defendant Vincent Scianna is presently employed by FCPD.
[2] The Supervisory Defendants' memorandum accompanying their motion, [Doc. No. 197], shall be referred to as "SD Mem." and their reply to Doe's opposition [Doc. No. 224] as "SD Reply." Barbazette and Mardocco's Memorandum accompanying their motion, [Doc. No. 202], shall be referred to as "BM Mem," and their reply to Doe's opposition, [Doc. No. 258], shall be referred to as "BM Reply." Doe's opposition to SD Mem., [Doc. No. 209], and BM Mem., [Doc. No. 205], shall be referred to as "SD Opp." and "BM Opp.," respectively. Additionally, Doe has moved for leave to file a sur-reply, [Doc. No. 227], and the accompanying sur-reply, [Doc. No. 229]. The Court will grant Doe's Motion and refer to the sur-reply as "Doe SR." Lastly, with the exception of SD Mem., the cited filings in this footnote are all under seal.

Motions, the memoranda in support thereof and in opposition thereto,[3] and the argument of counsel at the hearing held on November 23, 2022, and for the following reasons, (1) Barbazette's Motion is DENIED as to Counts I, II, and III and GRANTED as to Count IV;[4] (2) Mardocco's Motion is DENIED as to Counts I and II, and GRANTED as to Counts III and IV; (3) Baumstark and Roessler's Motion is DENIED; and (4) Scianna's Motion is GRANTED. Additionally, the Court will limit Plaintiff's conspiracy claim in Count III to a conspiracy between and among the Defendants, ████████████████████████████[5]

## I. BACKGROUND

### A. Factual Allegations in the Complaint

Based on the Court's review of the record in a light most favorable to the Plaintiff, the following facts are accepted as true for purposes of Defendants' Motions.

Doe was born in Costa Rica and in 2010 was approached by a woman to work as a nanny, housekeeper, or social escort in the United States. SAC ¶¶ 4-5. Unbeknownst to her, Doe was being recruited into a sex trafficking ring run by a woman named Hazel Sanchez. *Id.* at ¶ 6. Doe arrived at Dulles Airport in October 2010, at which point her belongings were confiscated, her family was threatened, and she was forced to work as a prostitute. *Id.* at ¶¶ 8-11. Doe was allowed to return home to Costa Rica on occasion, but always returned to Virginia for fear of the harm that

---

[3] On November 8, 2022, Plaintiff filed a Motion for Leave to File a Sur-reply Brief. [Doc. No. 227]. More than fourteen days having passed since that filing and without any opposition by Defendants, the Court will grant that Motion.

[4] The SAC inadvertently numbered Count IV as Count III, resulting in two counts labeled as "Count III." For all intents and purposes, the second "Count III" in the SAC should be Count IV and is references as such throughout this memorandum.

[5] On December 1, Plaintiff filed a Motion for Leave to File a Third Amended Complaint, [Doc. No. 299], following which the Supervisory Defendants filed their opposition and requested a hearing, [Doc. No. 324]. The Court's limitation of Plaintiff's conspiracy claim for the purposes of the pending Motions for Summary Judgment is without prejudice to Plaintiff's Motion for Leave to Amend her Complaint and the Court's reconsideration of its rulings on the pending Summary Judgment Motions, were the Court to grant that Motion for Leave to Amend.

Sanchez would cause to her family if she did not. *Id.* at ¶ 14. Doe eventually escaped from the Sanchez ring in April 2015. *Id.* at ¶ 15.

From 2002-2017, William Woolf worked in various roles for FCPD, including as a detective in a federally funded human trafficking task force from October 2013 to 2017. *Id.* at ¶ 16. Woolf did not receive institutional support in this role and was constantly disparaged by Barbazette and Baumstark. *Id.* at ¶ 17. Factions within FCPD thwarted and hampered Woolf's efforts to combat sex trafficking in Fairfax County. *Id.* at ¶ 18. Barbazette was Woolf's supervisor, and in 2014-15 took "substantial interest" in Woolf's work, at one point asking for a victim's phone number. *Id.* at ¶ 19. Barbazette also indicated to Woolf that he was interested in women who provided commercial sex, following which Woolf's investigative work became more difficult. *Id.* at ¶¶ 19-20. Among other things, Woolf's previously successful investigative efforts stopped turning up leads, and Barbazette became hostile and exercised great control over Woolf's work. *Id.* at ¶¶ 21-22.

In 2014 or 2015, Woolf reported Barbazette's "unusual and disruptive actions and orders" to Barbazette's supervisor, Baumstark. *Id.* at ¶ 27. Baumstark refused to help, ordered Woolf to not repeat his comments, and told Woolf that he was alone and that Baumstark would not help him. *Id.* Woolf informed Baumstark that sex trafficking victims had confided in him that FCPD officers were extorting and protecting sex trafficking rings, but Baumstark told him to ignore it and Baumstark never took any subsequent action, to Doe's detriment. *Id.* at ¶ 28. Woolf later requested a supervisor other than Barbazette, and in response was ordered by Barbazette to not open any new trafficking investigations and to close his existing cases. *Id.* at ¶¶ 30-32.

Woolf is a private pilot and in the spring of 2016 was investigated for flying to a witness interview, even though in other instances he was previously granted permission to do so. *Id.* at ¶

3

34. Scianna conducted an "aggressive" interview, even though Scianna had no supervisory authority over Woolf. *Id.* Rather, Scianna was told by others, with Roessler's knowledge, to intimidate Woolf so that he would retreat from his sex trafficking investigations. *Id.* at ¶ 35. Scianna threatened Woolf's career if he continued to fly to meetings, and then turned off the recording device that had been on during the interview. *Id.* at ¶ 36. After ending the recording, Scianna told Woolf that he (Woolf) knew what this was really about, that he should keep his mouth shut and not speak about human trafficking, that he should think about his kids, and that if Woolf did not cooperate then he would never work in law enforcement again. *Id.* at ¶ 37. The next day, Woolf told Scianna that he was "on board," and two days later he received an anonymous call from someone he believes to have been Roessler. *Id.* at ¶¶ 39-40. Roessler called to confirm that Woolf would "play ball." *Id.* at ¶ 40. Woolf later left FCPD in September 2017 to combat human trafficking in other positions. *Id.* at ¶ 43.

After Doe escaped, the FBI investigated the Sanchez ring with Doe's help. *Id.* at ¶ 45. The FBI located Barbazette and Mardocco's telephone numbers on Doe's phone. As a result of the FBI investigation, Sanchez was sentenced to five years in prison following a guilty plea on related prostitution charges, but not human trafficking. *See Id.* at ¶ 47. The FBI's Public Corruption Division then investigated Sanchez's connection to FCPD officers, though declined to file charges against any officers and referred the case back to FCPD. *Id.* at ¶¶ 48-49. FCPD, with Roessler's approval, allowed Barbazette and Mardocco to resign quietly and maintain their pensions. *Id.* at ¶ 50.

### D. Cindy Alvarado's Declaration

In her opposition to the Motions for Summary Judgment, Doe included a declaration from Cindy Vanessa Alvarado, a victim in Sanchez's sex trafficking ring and known in Sanchez's

criminal case as "C.V.A." and to Doe as "Vanessa." It appears that this declaration was the first time that Doe presented to Defendants many of the facts set forth in her declaration.

As reflected in her declaration, Alvarado was born in Costa Rica and flown to Dulles Airport in December 2010 after being promised by one of Sanchez's associates that she would work as a nanny. Alvarado Decl. ¶¶ 1-5 [Doc. No. 206-2]. Upon her arrival in the United States, her passport was confiscated and she was coerced into prostitution by way of threat of harm to her family in Costa Rica. *Id.* at ¶¶ 6-9, 15. During the period when Alvarado was sex trafficked, she befriended Doe, but the two never learned one another's true names. *Id.* at ¶ 29. Alvarado confirmed in her declaration many of Doe's allegations, including those based on information and belief in the SAC. *See, e.g.*, *id.* at ¶¶ 28-31.





In May 2011, Alvarado left Northern Virginia but continued to be sex trafficked in Florida by Sanchez. *Id.* at ¶¶ 53-54. In June 2016 Alvarado escaped and began cooperating with the FBI. *Id.* at ¶¶ 55-57.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), courts can only grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There exists a factual dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. More than just a scintilla of evidence is required to defeat summary judgment, and where a fact may affect the outcome of the suit, it is material. *Id.* at 248, 252.

Additionally, "summary judgment is not a procedural second chance to flesh out inadequate pleadings." *Wasco Prods., Inc. v. Southwall Techs., Inc.* 435 F.3d 989, 992 (9th Cir. 2006). Federal Rule of Civil Procedure 8(a)(2) requires in a pleading that a plaintiff "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) (citation and quotation omitted).

### III. ANALYSIS

#### A. Admissibility of Cindy Alvarado's Declaration and Testimony

In opposing summary judgment, Plaintiff has submitted Alvarado's declaration. Defendants argue that it should not be considered, principally because the information contained in that declaration was allegedly not disclosed as required under the Federal Rules. SR Reply 2; BM Reply 2. Federal Rule of Civil Procedure 26 requires that

> a party must, without awaiting a discovery request, provide to the other parties . . . the name, and if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.

Fed. R. Civ. P. 26(a)(1)(A)(i). Following a party's initial Rule 26(a) disclosures,

> [a] party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

Fed. R. Civ. P. 26(e)(1)(A). Failure to sufficiently provide information or identify witnesses, including failure to adequately supplement, results in the exclusion of that evidence or witness for the duration of the litigation. *Id.* at 37(c)(1). These rules are intended to allow parties to litigation to prepare for trial and "avoid any unfair surprise." *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 (4th Cir. 2014).

According to Alvarado, she learned of this case through news reports, and contacted Doe's attorney on July 6, 2022. [Doc. No. 206-2] at ¶ 58. Alvarado then flew to Virginia the following day, at her own expense, and was interviewed by Doe's counsel on July 8-9, 2022. *Id.* On July 11, 2022, Doe made a supplemental disclosure pursuant to Federal Rule of Civil Procedure 26(a) that listed "Cindy Alvarado," her address and phone number under the heading of "Trafficked sex

7

workers with knowledge of operation, solicitation, protection, etc." [Doc. No. 229-1] at p. 9-11. However, the disclosure did not identify Alvarado as the person previously listed in Doe's Rule 26(a) initial disclosures as "Vanessa L.N.U.," which is how she was described initially, *id.* at p. 2, and in the amended initial disclosures, *id.* at p. 7. Nor did it list Cindy Alvarado's middle name or initial, which would have likely helped Defendants connect the two names. Following Doe's amended disclosure listing Alvarado's contact information on July 11, Doe responded to interrogatories without providing the substantive information that was later included in Alvarado's declaration.

Defendants essentially argue that because Doe's counsel interviewed Alvarado before Doe's interrogatory answers, and because Doe admitted to speaking with Alvarado, Doe—or at a minimum her counsel—was aware of the substance of what Alvarado said in her declaration but hid that information from them until the filing of her declaration with her opposition to Defendants' summary judgment motions. SD Reply 4-5; BM Reply 5-7.

Doe's counsel maintains that he had discharged all disclosure obligations under the circumstances. More specifically, Doe's counsel contends that he timely amended her initial disclosures to include Alvarado's name, contact information and the subject matter about which she had knowledge[6] and that at Doe's deposition on August 24, 2022, he explicitly disclosed that Vanessa was Alvarado.[7] Opp. 8. Further, he asserts that up until the filing of her opposition to the

---

[6] Specifically, Alvarado was listed under the heading, "Trafficked sex workers with knowledge of operation, solicitation, protection, etc." Doe SR Ex. 1 at p. 10-11.

[7] Doe stated that she had recently spoken with Vanessa but did not know where Vanessa lived or her contact information. [Doc. No. 224-4] at p. 5-6. Immediately following that exchange, Doe was asked, "Who is Cindy Alvarado?" *Id.* at p. 6. Doe stated she did not know. *Id.* Shortly thereafter, Doe's counsel interjected in an attempt to "clarify" things and stated that

> "I deem it my obligation to provide contact information, whether useful or not, for any person who might be responsive as a matter of disclosures, if I come up with it, regardless of whether my client has come up with it or even knows it. So those entries are entries that I've submitted as a matter of disclosures of people who know whatever or may know whatever it is that is referred to in that category of disclosure. The Plaintiff may not know these details, but I think I've got to make the disclosure."

summary judgment motions, Doe herself never knew the extent of Alvarado's knowledge with respect to the Sanchez operation,[8] *id.*, and that any surprise Defendants' felt by Alvarado's declaration was solely attributable to their own decision not to depose or otherwise attempt to interview Alvarado, even though there remained time to do so before the discovery cutoff after they learned that Alvarado was Vanessa.

The Court finds an insufficient basis to exclude Alvarado's declaration for the purposes of the summary judgment motions. Her identity, contact information, and the general subject matter on which she had knowledge was disclosed in supplemental disclosures once it was known to Doe's counsel; and Doe's deposition appears to have reflected what Doe herself knew. In any event, exclusion of Alvarado's declaration would not be warranted under the *Southern States* test pertaining to whether a discovery failing is "substantially justified or harmless" for the purposes of Rule 37(c)(1). Under the under the five-factor *Southern States* test, a court looks to:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence.

*Wilkins v. Montgomery*, 751 F.3d 214, 222 (4th Cir. 2014) (quoting *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596-97 (4th Cir. 2003)). The first four factors essentially ask whether the failure to comply was harmless, and the last factor relates to whether there is a substantial justification for the failure. *Wood v. Credit One Bank*, No. 3:15-cv-594, 2017 WL 11503875, at *3 (E.D. Va. Sept. 21, 2017) (citation omitted). District courts have discretion in considering the *Southern State* factors, and while they "should" be guided by them, a rigid application is not mandatory. *Wilkins*, 751 F.3d at 222.

---

*Id.* at p. 8. After some back and forth, Doe's counsel advised that Alvarado was Vanessa.
[8] This statement largely tracks with Doe's deposition, where she repeatedly denied knowing the type of information that Alvarado alleged in her declaration. [Doc. No. 258-2] at 5-11.

While Defendants may have been surprised by the contents of Alvarado's declaration, particularly in light of Doe's responses in her deposition and to the interrogatories, Defendants were provided Alvarado's contact information in July and learned in August that Vanessa and Alvarado were one in the same—before the close of discovery. For whatever reason, Defendants opted not to depose Alvarado, nor seek Doe's consent or a court order to depose Alvarado after discovery closed. Moreover, while Defendants claim that until the filing of Alvarado's declaration they thought any information Alvarado might have was about sex trafficking generally and not these Defendants' involvement with it, and therefore irrelevant, that position is difficult to square with the disclosure that Alvarado, as a sex trafficking victim, had knowledge with respect to the allegations in the complaint, as stated in Doe's Supplemental disclosures on July 11, 2022. *See* Doe SR Ex. 1 at p. 10-11 ("Trafficked sex workers with knowledge of . . . protection"). And certainly, by the end of Doe's deposition, Defendants were on notice that Vanessa, someone Doe testified about, was in fact Alvarado. As to the importance of Alvarado's knowledge, both parties acknowledge that Alvarado's declaration goes "to the heart of this case." As to the fifth factor, Doe's counsel explained at the summary judgment hearing that he walled off Alvarado's testimony from Doe because he did not want to create the appearance that the two created the narrative of the case in concert. And while counsel did not address specifically his failure to expressly note in the supplemental disclosure that "Vanessa L.N.U" and Alvarado were one in the same, it is not clear that he had an obligation to do so. Upon consideration of the *Southern States* factors, the importance of the evidence counsels that Alvarado's declaration can be considered at this stage of the litigation. [9]

---

[9] On December 1, Barbazette and Mardocco filed a third motion *in limine*, [Doc. No. 302], to exclude, *inter alia*, Alvarado from testifying. The following day, Barbazette and Mardocco filed a fourth motion *in limine*, [Doc. No. 310] and the Supervisory Defendants also filed a motion *in limine*, [Doc. No. 316]. The Court's decision to consider the

**B. Count I: 18 U.S.C. §§ 1589(b) and 1593A**

Doe alleges in Count I that Barbazette and Mardocco (but not the Supervisory Defendants)

violated two provisions of the TVPRA. First, 18 U.S.C. § 1589(b) states as follows:

> Whoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a)[10], knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means, shall be punished . . . .

Second, Doe also alleges a violation of 18 U.S.C. § 1593A, which states as follows:

> Whoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in any act in violation of this chapter, knowing or in reckless disregard of the fact that the venture has engaged in such violation . . . .

Under 18 U.S.C. § 1595, TVPRA victims may bring civil claims against any perpetrator or anyone

who "knowingly benefits, financially or by receiving anything of value from participation in a

venture which that person knew or should have known has engaged in an act in violation of" the

TVPRA. 18 U.S.C. § 1595(a).



---

Alvarado declaration at the summary judgment phase, along with other evidence at this stage that may be subject to motions *in limine*, are without prejudice to those motions.

[10] Subsection (a) punishes, *inter alia*, anyone who "knowingly provides or obtains the labor or services of a person by . . . means of serious harm or threats of serious harm to that person or another person . . . [or] by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm." 18 U.S.C. § 1589(a).



Based on this evidence,[12] there are material facts in dispute as to whether

Barbazette and Mardocco ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████.[13]

Accordingly, Barbazette and Mardocco's Motion with respect to Count I is DENIED.

### C. Count II: 18 U.S.C. §§ 1590(b) and 1591 (d)

Count II charges all Defendants with violating 18 U.S.C. §§ 1590(b) and 1591(d). Section

1590 reads as follows:

> (a) Whoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter shall be [lists punishments].

> (b) Whoever obstructs, attempts to obstruct, or in any way interferes with or prevents the enforcement of this section, shall be subject to the penalties under subsection (a).

Section 1591, in relevant part, reads as follows:

> (a) Whoever knowingly—

>> (1) in or affecting interstate or foreign commerce . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

>> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

---

[12] Plaintiff also points to the Woolf declaration and FBI findings ████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

> knowing . . . in reckless disregard of the fact, that means of force,
> threats of force, fraud, coercion described in subsection (e)(2)[14], or
> any combination of such means will be used to cause the person to
> engage in a commercial sex act . . . shall be punished . . . .

(d) Whoever obstructs, attempts to obstruct, or in any way interferes with or prevents the enforcement of this section, shall be [lists punishments].

Barbazette and Mardocco seek summary judgment as to Count II on the grounds that "it is undisputed that none of the defendants had knowledge that Sanchez was allegedly running a sex trafficking venture ███████████████ .███████████████████████████

███████████████████████████████████████████
███████████████████████████████████████████

Additionally, Barbazette and Mardocco claim that they cannot be liable for obstructing, attempting to obstruct, or interfering with any investigation since the investigation into Sanchez's sex trafficking ring "first commenced sometime after the spring of 2018," citing to *United States v. Brinson*, 772 F.3d 1314 (10th Cir. 2014) and *United States v. Farah*, 766 F.3d 599 (6th Cir. 2014). BM Mem. 23.████████████████████████████████████

███████████████████████████████████████████
███████████████████████████████████████████

Similarly, the Supervisory Defendants argue that a prerequisite to Count II is that an actual investigation was taking place. SD Mem. 20. In addition to citing *Brinson* and *Farah*, they also cite *Gilbert v. United States Olympic Comm.*, 423 F. Supp. 3d 1112 (D. Colo. 2019). But that case

---

[14] Subsection (e)(2) defines "coercion, in relevant part, as follows:
   (B) any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person

also does not involve law enforcement officers. The Supervisory Defendants also minimize Doe's evidence against them as "nothing to do with her victimization in the Sanchez organization" and instead focused on Woolf's "workplace grievances." SD Mem. 197. █████████████████████████

███████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████████

Additionally, there is evidence that certain Defendants acted in ways to inhibit the TVPRA's enforcement. Detective Woolf was the only FCPD officer assigned to the federally funded task force on human trafficking in Northern Virginia. SAC ¶ 16. While Defendants had no obligation to enforce federal law, there was a federally funded human trafficking task force on which Woolf, an FCPD detective, served; ██████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

█████ In that regard, Barbazette, as Woolf's supervisor, made Woolf's work "markedly more difficult" after taking an interest in it, and eventually ordered Woolf not to open any new trafficking investigations. *Id.* at ¶¶ 20, 31. Baumstark refused to help Woolf navigate Barbazette's hostilities, including by telling him that he was "on an island." *Id.* at ¶ 27. Scianna investigated Woolf in the spring of 2016 for flying himself to witness interviews without proper authority to do so, even though Scianna was not part of internal affairs or Woolf's supervisor. *Id.* at ¶¶ 34-35. At the conclusion of that interview, Scianna insinuated that the investigation was about Woolf's sex trafficking work and threatened his employment should he continue to investigate human trafficking. *Id.* at ¶ 37. Following that conversation, Roessler called Woolf to ensure he would

comply with Scianna's directives. *Id.* at ¶¶ 40-41. ████████████████████

████████████████████████ [Doc. 206-7] ¶ 11. And though

the Woolf evidence occurred after Doe escaped, a reasonable jury could take that evidence, along

with Doe and Alvarado's statements, to find that Barbazette, Mardocco,[15] Roessler, and

Baumstark, each in their own ways and by virtue of their positions as police officers, interfered,

or attempted to interfere, with enforcement of the TVPRA during the time period when Doe was

allegedly sex trafficked by Sanchez.

As to Scianna, neither Doe nor Sanchez have identified Scianna; and Scianna's liability is

based solely on Woolf's testimony, which identifies all of Scianna's alleged inculpatory conduct

as taking place *after* Doe escaped from Sanchez. At best, and taking the allegations as true, the

evidence suggests that Scianna was complicit in thwarting efforts to uncover sex trafficking

generally beginning in 2016. There is no evidence to suggest that he was made aware, even after

the fact, of the Sanchez operation, and more specifically, Doe's involvement. Therefore, nothing

Scianna is alleged to have done caused any legally cognizable detriment to Doe, who had already

escaped from the Sanchez enterprise nearly a year earlier. Accordingly, there is no material dispute

of facts as to the timeline of Scianna's alleged involvement and based on those undisputed facts,

Scianna is entitled to judgment in his favor as a matter of law as to Count II.

For the above reasons, the Court DENIES both Motions for Summary Judgment with

respect to Count II for Barbazette, Mardocco, Roessler, and Baumstark, and GRANTS the

Supervisory Defendants' Motion with respect to Scianna.

---

[15] While Woolf's statements do not reflect on Mardocco, ███████████████████████████████
████████████████████████████████████

**D. Count III: 18 U.S.C. §§ 1594(b) and (c)** *(Conspiracy re: TVPRA enforcement)*

All Defendants are charged with conspiring to obstruct, interfere, or prevent the enforcement of the TVPRA under 18 U.S.C. §§ 1594(b) and (c), which read as follows:

> (b) Whoever conspires with another to violate section 1581, 1583, 1589, 1590, or 1592 shall be punished in the same manner as a completed violation of such section.
>
> (c) Whoever conspires with another to violate section 1591 shall be fined under this title . . . .

As already discussed, there is sufficient evidence from which a jury could find Defendants Barbazette, Mardocco, Roessler, and Baumstark liable for violating sections 1590 and 1591. Here, the issue is whether there is sufficient evidence that would allow a jury to find a conspiracy existed among and between the Defendants.



The Federal Rules are designed to provide defendants with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 508 (citation and quotation omitted). And Fourth Circuit precedent is clear that new legal theories cannot be advanced in opposition to a motion for summary judgment. *See Harris v. Reston Hosp. Center, LLC*, 523 Fed. App'x 938, 946 (4th Cir. 2013) (affirming a district court's refusal to consider "a new legal theory for the first time in opposing summary judgment" on the grounds that it "amounted to constructive amendment of the amended complaint and thus unfairly prejudiced the

---

[16] The SAC contains two different paragraphs both numbered "58." The allegation of a conspiracy with "others" is found in both of those paragraphs.

defendant"); *see also Faulconer v. Centra Health, Inc.*, 808 Fed. App'x 148, 155 (4th Cir. 2020) (affirming the district court because "nothing in [plaintiff's] complaint, filed by counsel, even hinted at the new theory and new factual allegations [plaintiff] put forth in opposition to [defendant's] summary judgment motion," and therefore defendant "had no opportunity during discovery to gather facts targeted to this new theory"). Based on the SAC and her answers to interrogatories, Defendants have not had fair notice that Doe's conspiracy claim is based on ▮ ▮ as opposed to the Defendants themselves. The reference to "others" in the SAC is clearly insufficient, particularly since ▮

▮ Similarly, Doe failed to disclose that conspiracy claim or the factual basis for any such claim in her responses to discovery requests designed to uncover any such claim.[17] Accordingly, the conspiracy claim alleged in Count III (and for similar reasons Count IV) is limited to a conspiracy between the Defendants, ▮

▮ and the Court has assessed the summary judgment motions with respect to Count III based on this limitation.

Liability for conspiracy under the TVPRA requires "(1) that two or more persons entered an agreement to commit sex trafficking in violation of [the TVPRA]; (2) that [Defendants] knew of the conspiracy; and (3) that [Defendants] knowingly and voluntarily became part of the conspiracy." *United States v. McMillan*, 813 Fed. App'x 846, 849 (4th Cir. 2020). Circumstantial evidence based on "the conduct of alleged conspirators can give rise to an inference that an

agreement exists." *United States v. Wysinger*, No. 5:17-cr-22, 2019 WL 2610120, at \*2 (W.D. Va. June 25, 2019).

As to Barbazette, Baumstark, and Roessler, the evidence precludes judgment as a matter of law in favor of those defendants as to the conspiracy alleged in Count III. The accounts by Doe and Alvarado, together with Woolf's statements, sufficiently evidence



The record is different as to Mardocco. In that regard, Woolf stated in his deposition that he had no information or knowledge related to Mardocco and the information he provided Doe in support of the SAC did not pertain to Mardocco. Woolf Dep. [Doc. No. 202-8] at 18:9-16, 292:8-293:12. There is also no other direct or circumstantial evidence sufficient to impose liability for Mardocco's participating in the alleged conspiracy.

Accordingly, based on these

undisputed facts, Mardocco is entitled to judgment as a matter of law as to the conspiracy claim in Count III.

As to Scianna, Woolf's statements, through his declaration, are the only evidence pertaining to Scianna's efforts to interfere with an investigation. But Woolf's evidence only speaks to the time period *after* Doe's escape and victimization. Based on this record, there is no material fact in dispute with respect to Scianna's liability and he is entitled to judgment as a matter of law.

For the above reasons, the Court will GRANT the Motions with respect to Scianna and Mardocco, DENY the Motions with respect to Barbazette, Roessler, and Baumstark, and limit Doe's theory of Count III to a conspiracy between and among Barbazette, Roessler, and Baumstark.

**E. Count IV: 18 U.S.C. §§ 1594(b) and (c)** *(Conspiracy re: unlawful benefits)*

Count IV is alleged only against Barbazette and Mardocco. The requirements for conspiracy are identical as to Count III. ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████

For similar reasons as articulated in Section III(D), *supra*, the Court will only consider whether a conspiracy exists between Barbazette and Mardocco, not whether one existed individually between (a) Barbazette and Sanchez, (b) Mardocco and Sanchez, or (c) Barbazette and/or Mardocco and the Supervisory Defendants. ████████████████████████████

████████████████████████████████████████████████████████████

[REDACTED]

*See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) ("[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.").

Accordingly, Barbazette and Mardocco's Motion with respect to Count IV is GRANTED.

### F. TVPRA Statute of Limitations

The statute of limitations for civil claims under the TVPRA is 10 years after the cause of action arises. *Id.* at § 1595(c)(1). The limitations period begins to run when the conduct occurs or when the last element of the cause of action takes place. *Wang v. Enlander*, No. 17-cv-4932, 2018 WL 1276854, at *3 (S.D.N.Y. Mar. 6, 2018). While the Complaint was filed on October 12, 2021, it did not name any specific defendants. The first time that the five Defendants now before the Court were named in these proceedings was in the First Amended Complaint filed on December 17, 2021.[18] The parties appear to agree that alleged TVPRA violations must have accrued no later than December 17, 2011, not October 12. *See* Doe SR 1-3 (discussing December 2011).

[REDACTED]

Rather, it could have happened from October 11, 2010 to December 16, 2011, which was after Doe fell victim to Sanchez's enterprise but outside the 10-year limitations window. Given the Court's ruling dismissing Count IV, for Claim I to move forward Barbazette and Mardocco must have secured an unlawful benefit during the time period

---

[18] The docket shows a date of December 16, while the actual filing lists a date of December 17. Regardless, a one-day difference does not materially impact the statute of limitations analysis here.

of December 17, 2011 to December 17, 2021 ("SOL Period"). The time period within the SOL Period that Doe was trafficked is December 17, 2011 to April 25, 2015. And it is worth noting that Alvarado left Northern Virginia in May 2011,[19] which is outside the SOL Period.

It is well-established that circumstantial evidence is sufficient to support a claim. Here, there is sufficient circumstantial evidence based on facts presently in dispute for a jury to find that



---

[19] Alvarado continued to be a victim of Sanchez's enterprise through 2016 but was instead sex trafficked in Florida beginning in May 2011.



However, Woolf's statements provide evidence that Roessler and Baumstark thwarted efforts to uncover sex trafficking in Fairfax County during the SOL period, albeit after Doe escaped the Sanchez organization.

Accordingly, the Court rejects Roessler and Baumstark's statute of limitations defense as to Counts II and III at this stage and will leave the determination for the jury.

### G. Qualified Immunity Defense.

The Supervisory Defendants previously asserted a claim of qualified immunity at the motion to dismiss stage and renew that claim here. The Court previously rejected this defense, although it did so without prejudice. [Doc. No. 60] at 12. For the same reasons and given the additional evidence now before the Court.

the Supervisory Defendants are not entitled to judgment in their favor as a matter of law based on qualified immunity.[21]

---

[21] The Supervisory Defendants contend that the Plaintiff has conceded their qualified immunity claim by failing to address it specifically in her opposition. SD Reply 20. While the Supervisory Defendants' position has considerable force, under the specific circumstances of this case, the Court declines to grant summary judgment on that basis. In that regard, the Supervisory Defendants previously asserted a qualified immunity defense in two Motions to Dismiss, *see* [Doc. No. 41] at 12-14 and [Doc. No. 65] at 12-14, Doe opposed those motions, *see* [Doc. No. 50] at 27 and [Doc. No. 68] at n.6 (adopting prior opposition), and the Court denied those motions, *see* [Doc. No. 60] at 12 and [Doc. No. 70]. The nature of the Supervisory Defendants' qualified immunity defense remains unchanged since

Accordingly, it is hereby

**ORDERED** that Defendants Roessler, Baumstark, and Scianna's Motion [Doc. No. 196] be, and the same hereby is, **GRANTED** as to Scianna and **DENIED** as to Roessler and Baumstark; and it is further

**ORDERED** that Defendant Scianna be, and the same hereby is, **DISMISSED** from the above-captioned matter; and it is further

**ORDERED** that Defendants Barbazette and Mardocco's Motion [Doc. No. 199] be, and the same hereby is, **DENIED** as to both Barbazette and Mardocco with respect to Counts I and II, **DENIED** as to Barbazette with respect to Count III, **GRANTED** as to Mardocco with respect to Count III, and **GRANTED** as to both Barbazette and Mardocco with respect to Count IV; and it is further

**ORDERED** that Plaintiff's Motion for Leave to File Sur-Reply Brief [Doc. No. 227] be, and the same hereby is, **GRANTED**; and it is further

**ORDERED** that this Memorandum Opinion and Order shall be placed under seal and that the parties confer as to an appropriate redacted public version and present that proposed redacted copy, together with any unresolved issues, to the Court within seven (7) days of the date of this Memorandum Opinion and Order.

The Clerk is directed to forward copies of this Sealed Memorandum Opinion and Order via e-mail to all counsel of record.

Alexandria, Virginia
December 6, 2022

Anthony J. Trenga
Senior U.S. District Judge

---

the motion to dismiss stage, and the Court will not grant the Supervisory Defendants' Motion based on Doe's failure to address specifically an issue that she previously briefed and that the Court twice ruled on in her favor.