Case 1:21-cv-01150-AJT-JFA   Document 511   Filed 01/13/23   Page 1 of 22 PageID# 7113
Excerpt - Cross-examination of Kimberly Mehlman-Orozco by
Ms. Bardot

```
 1                 UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF VIRGINIA
 2                      ALEXANDRIA DIVISION

 3    --------------------------x
      JANE DOE,                   :     Civil Action No.:
 4                                :     1:21-cv-1150
                Plaintiff,        :
 5         versus                 :     Tuesday, January 10, 2023
                                  :
 6    FAIRFAX POLICE OFFICER      :
      No. 1, et al.,              :
 7                                :
                Defendants.       :
 8    --------------------------x

 9         The above-entitled jury trial was heard before the
      Honorable Anthony J. Trenga, United States District Judge.
10    This proceeding commenced at 5:14 p.m.

11                    A P P E A R A N C E S :

12    FOR THE PLAINTIFF:   VICTOR M. GLASBERG, ESQUIRE
                           NICKERA S. RODRIGUEZ, ESQUIRE
13                         VICTOR M. GLASBERG & ASSOCIATES
                           121 S. Columbus Street
14                         Alexandria, Virginia  22314
                           (703) 684-1100
15
      FOR THE DEFENDANTS:  HEATHER K. BARDOT, ESQUIRE
16    (Barbazette &        KARA A. SCHMIDT, ESQUIRE
      Mardocco)            MCGAVIN, BOYCE, BARDOT,
17                         THORSEN & KATZ, P.C.
                           9990 Fairfax Boulevard
18                         Suite 400
                           Fairfax, Virginia  22030
19                         (703) 385-1000

20    FOR THE DEFENDANTS:  JAMIE M. GREENZWEIG, ESQUIRE
      (Baumstark &         KIMBERLY P. BAUCOM, ESQUIRE
21    Roessler)            FAIRFAX COUNTY OFFICE OF THE
                           COUNTY ATTORNEY
22                         12000 Government Center Parkway
                           Suite 549
23                         Fairfax, Virginia  22035
                           (703) 324-2421

24

25
                                                              1
```

Case 1:21-cv-01150-AJT-JFA   Document 511   Filed 01/13/23   Page 2 of 22 PageID# 7114
Excerpt - Cross-examination of Kimberly Mehlman-Orozco by
Ms. Bardot

1                    A P P E A R A N C E S:

2  FOR INTERESTED PARTY: AISHLINN BOTTINI, ESQUIRE
   (Hazel Sanchez)          HAYNES AND BOONE LLP
3                           30 Rockefeller Plaza
                            26th Floor
4                           New York, New York  10112
                            (212) 659-7300
5
                            VINCENT SHIER, ESQUIRE
6                           HAYNES AND BOONE LLP
                            800 17th Street, NW
7                           Washington, D.C.  20006
                            (202) 654-4530
8
   COURT REPORTER:          STEPHANIE M. AUSTIN, RPR, CRR
9                           Official Court Reporter
                            United States District Court
10                          401 Courthouse Square
                            Alexandria, Virginia  22314
11                          (571) 298-1649
                            S.AustinReporting@gmail.com
12
            COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES
13

14

15

16

17

18

19

20

21

22

23

24

25
                                                              2

Case 1:21-cv-01150-AJT-JFA   Document 511   Filed 01/13/23   Page 3 of 22 PageID# 7115
Excerpt - Cross-examination of Kimberly Mehlman-Orozco by
Ms. Bardot

```
 1                    P R O C E E D I N G S

 2                         EXCERPT

 3                (Time noted:  5:14 p.m.)

 4          THE COURT:  All right.  Ms. Bardot.

 5          MS. BARDOT:  If you bear with me one minute.  Let

 6   me get a little organized.

 7          THE COURT:  Yes.

 8          MS. BARDOT:  I have too many binders, I apologize.

 9                    CROSS-EXAMINATION

10   BY MS. BARDOT:

11   Q    Dr. Mehlman-Orozco, when you drafted your reports in

12   this matter for Mr. Glasberg, you knew that they would be

13   used for purposes of litigation; correct?

14   A    Yes, ma'am.

15   Q    And you knew that you would be an expert witness

16   getting on the stand in front of a jury providing testimony

17   in support of Doe's case in her quest to get a judgment

18   against these defendants; correct?

19   A    My understanding is that I would provide testimony to

20   educate the trier of fact; not necessarily in support -- or

21   certainly not in support of one side or the other, but based

22   off the data, science, research and information that I've

23   obtained through my career.

24   Q    All right.  And so in preparing to come before this

25   jury -- in preparing to come before this jury, you spoke
```

                                                              3

Excerpt - Cross-examination of Kimberly Mehlman-Orozco by
Ms. Bardot

```
 1   with Jane Doe; correct?
 2   A    Yes, ma'am.  I conducted several interviews with her.
 3   Q    And that was in June of 2022; correct?
 4   A    I believe June, and potentially a couple days in July.
 5   But yes.
 6   Q    And you did not review her deposition or her sworn
 7   testimony; correct?
 8   A    I'm not -- I don't recall whether that was one of the
 9   documents that was provided to me after the submission of my
10   reports.
11   Q    Okay.  But in writing your reports, you had no sworn
12   testimony from her; correct?
13   A    She had not been deposed, yet.
14   Q    And you've never spoken with my clients; correct?
15   A    No, ma'am.
16   Q    I didn't ask the question very well.
17        Have you ever spoken with my clients?
18   A    No, ma'am.
19   Q    Okay.  And you haven't spoken with Officer --
20   Mr. Baumstark; correct?
21   A    No, ma'am, I have not.
22   Q    And you haven't spoken with Ed Roessler either;
23   correct?
24   A    No, ma'am, I have not.
25   Q    Okay.  And you haven't spoken, in writing your reports,
```

4

Excerpt - Cross-examination of Kimberly Mehlman-Orozco by
Ms. Bardot

```
 1   with Cindy Alvarado; correct?

 2   A    That's correct.  She had not, I think -- because she

 3   hadn't been deposed, and I certainly hadn't spoken to her.

 4   Q    And you didn't write any supplemental reports in this

 5   case either; correct?

 6   A    I was not asked to write any supplemental reports in

 7   this case.

 8   Q    Okay.  And so the information that you got in this case

 9   was largely information that Doe provided to you when you

10   wrote your reports; correct?

11   A    I would say largely the information that's included in

12   my reports is based off of my expertise, my research, my

13   education and my work within the field.  And then, in

14   addition to that, I reviewed the documents that were

15   provided to me which include various documents from the

16   criminal prosecution of Hazel Sanchez, some documents that I

17   believe I can't say what they were, and also certainly the

18   interview that I conducted.  But also the searches that I

19   personally performed looking for online advertisements, as

20   well as commercial sex consumer reviews of the -- Hazel

21   Sanchez's commercial sex enterprise.

22   Q    I want to talk about what you didn't review.

23   A    Okay.

24   Q    Okay.  You didn't review answers to interrogatories

25   from any party, questions that were sent to one another
```

5

Excerpt - Cross-examination of Kimberly Mehlman-Orozco by
Ms. Bardot

```
 1   where answers were given; correct?

 2   A    That's not correct.  I believe I did review that.

 3   Q    Well, why don't you pull out your report, because I'm

 4   quite confident it's not listed there, and you testified at

 5   your deposition that you had not.

 6   A    Let's see.

 7   Q    And I think it's on page 50 of your first report, the

 8   documents that you reviewed.

 9        There's not a deposition listed or answers to

10   interrogatories; correct?

11   A    My recollection -- it's -- no deposition is listed;

12   however, I do recall seeing answers to interrogatories.  I

13   don't know if it was after or --

14   Q    I'm asking at the time you wrote your report, in that

15   list that you have right there, it does not reference that

16   you've reviewed answers to interrogatories; correct?

17   A    That is correct.  It's not listed.

18   Q    All right.  And you spoke with nobody other than Doe

19   before you wrote that report; correct?

20   A    That's correct.  I did not conduct any other interviews

21   except for of the plaintiff.

22   Q    All right.  You did review Ms. Sanchez's sentencing

23   memorandum in her criminal case, I think you referred to

24   that; correct?

25   A    Correct.
```

Stephanie Austin, RPR, CRR USDC/EDVA (571) 298-1649

Excerpt - Cross-examination of Kimberly Mehlman-Orozco by
Ms. Bardot

```
 1   Q     And you knew that she was not charged with a TVPRA
 2   offense; correct?
 3   A     Correct.
 4   Q     All right.  And in that sentencing memorandum for
 5   Ms. Sanchez, you know that it says that there are 272,000 --
 6   272,000 pages of discovery with nothing showing coercion by
 7   Sanchez, and you admitted, when I took your deposition, that
 8   you reviewed none of those documents; correct?
 9   A     That's correct.
10   Q     All right.  And you made no attempt to review those
11   documents; correct?
12   A     The documents -- which documents again?
13   Q     The 272,000 pages of documents that show that
14   Ms. Sanchez did not coerce the plaintiff.
15         MR. GLASBERG:  Your Honor, I'm going to object to
16   the plaintiff -- counsel is testifying through her question.
17         THE COURT:  Well, this is information that I
18   understand that she had available to her and she reviewed.
19         MR. GLASBERG:  Well, the 250,000 pages were not
20   produced in response to my *Touhy* request, they were not
21   produced to the defendants because they didn't ask, and what
22   was produced was heavily redacted.  We don't know what was
23   in that document.
24         THE COURT:  Hold on.  Let me see counsel.
25                    (Bench conference.)
```

7

Excerpt - Cross-examination of Kimberly Mehlman-Orozco by
Ms. Bardot

```
 1              THE COURT:  She was provided the sentencing

 2    memorandum?

 3              MS. BARDOT:  Correct.

 4              THE COURT:  You're asking her if she had the

 5    sentencing memorandum?

 6              MS. BARDOT:  I asked her that, and all were

 7    without objection, if she reviewed the 272,000 pages of

 8    discovery materials.  She answered that without objection.

 9              So my follow-up question:  Did you make any

10    attempt to review them.  Her answer will be no, she made no

11    attempt to try to get the materials.

12              THE COURT:  I think you can ask her about what was

13    provided to her and the substance of what was provided to

14    her, whether she considered that.

15              MS. BARDOT:  Okay.  Very well.

16              MR. GLASBERG:  Yeah.  Well --

17              MS. BARDOT:  I'm going to -- withdrawn.

18              MR. GLASBERG:  With the qualification that she not

19    add her gloss on it describing what is or is not in the

20    documents that she has never seen, that I have never seen.

21              THE COURT:  Right.  You're not going to do that.

22              MS. BARDOT:  I'm done.  I withdraw the question.

23    I'm going to move on.

24                        (Open court.)

25    BY MS. BARDOT:
```
                                                              8

Excerpt - Cross-examination of Kimberly Mehlman-Orozco by
Ms. Bardot

1    Q    You understand from your review of the sentencing

2    memorandum that Ms. Sanchez disputes that she ever subjected

3    Doe to sex trafficking; correct?

4    A    Yes, that's my understanding.

5    Q    Okay.  And you did not speak with Ms. Sanchez or

6    attempt to speak with her; correct?

7    A    That's correct.

8    Q    You did not review any documents related to immigration

9    issues which Doe was facing at the time she decided to go to

10   the FBI and report that she claimed to be trafficked;

11   correct?

12   A    I know I did review something related to her

13   immigration proceedings.  I don't know if it was a T visa

14   application, a declaration associated with that, but I did.

15   Q    That was the limitation of what you reviewed was her

16   declaration in support of her T visa application; correct?

17   A    That's my recollection.

18   Q    So, for instance, you don't know if when she went --

19            MR. GLASBERG:  Your Honor, I'm going to object to

20   the question if counsel is going to introduce facts that

21   are --

22            THE COURT:  Right.  I don't think you can --

23            MS. BARDOT:  I haven't even asked the next

24   question.

25            THE COURT:  Go ahead.  All right.  You shouldn't

9

Excerpt - Cross-examination of Kimberly Mehlman-Orozco by
Ms. Bardot

```
 1    describe the substance of something she didn't review.
 2              MS. BARDOT:  I'm not intending to.
 3              THE COURT:  All right.
 4    BY MS. BARDOT:
 5    Q    So did you see any other immigration papers related to
 6    Doe at all?
 7    A    Not that I can recall.
 8    Q    You previously testified that it was your understanding
 9    when Doe went to the FBI that she was facing a legal
10    proceeding based on an allegation that she was engaged in
11    sex work.
12              What was that allegation, as you understood it,
13    that caused her to go to the FBI?
14    A    My recollection is that at -- I think at two different
15    points following her escape from Hazel Sanchez's commercial
16    sex operation, that she had engaged in sex work, one, by
17    virtue of her second husband who she described as
18    trafficking her.  Not in her words, but based on how she
19    described that situation.  But, in addition to that,
20    consistent with what I see in sex trafficking survivors, she
21    engaged --
22    Q    I'm asking specific as to Doe.
23              So when you said that Doe had gone to the FBI
24    because she was facing allegations that she was engaged in
25    sex work, are you talking about her second husband and the
```

10

Excerpt - Cross-examination of Kimberly Mehlman-Orozco by
Ms. Bardot

1    prostitution charge that came out of it?

2    A    I would like to finish my answer.

3              THE COURT:  Why don't you answer her question, and

4    Mr. Glasberg can bring out what you want to bring out.

5              THE WITNESS:  Okay.  Could you ask specifically

6    what you would like me to answer?

7    BY MS. BARDOT:

8    Q    I thought I had, but I'll try again.

9              So when you said that she had made her tip to the

10   FBI because she had an allegation that she was engaged in

11   sex work, is it your understanding that she went to the FBI

12   after she got charged with prostitution on her assertion

13   that her husband was causing her to traffic herself -- I

14   mean to prostitute herself?

15   A    My understanding -- and I just want to be clear -- is

16   that following Hazel Sanchez's commercial sex operation,

17   that Jane Doe, through self-report and other extant

18   information, engaged in survival sex on two occasions on two

19   separate points in time where she was independent, she was

20   not being trafficked, and then was also sex trafficked by

21   her second husband.

22             With that being said, I am not clear the charges,

23   what they were associated with.  I don't recall whether they

24   were associated with the sex trafficking by her second

25   husband or the survival sex that she engaged in

                                                              11

Excerpt - Cross-examination of Kimberly Mehlman-Orozco by
Ms. Bardot

```
 1   independently.
 2             MS. BARDOT:  Okay.  Your Honor, I'm going to move
 3   to strike.  I think that was non-responsive.  You had
 4   already talked about the survival sex, and certainly I think
 5   it was non-responsive.
 6             THE COURT:  Overruled.  I'm not going to strike
 7   the answer.
 8             Go ahead.
 9   BY MS. BARDOT:
10   Q    During what period of time do you understand that she
11   was allegedly trafficked by her second husband, Ben Lugo?
12   A    It's not clear from my notes.  I think that in two
13   different places, it had either said 2015 to 2016 or 2015 to
14   2018.  So I'm not exactly clear.  But sometime between that
15   time period.
16   Q    Did you ever speak with or attempt to speak with
17   Mr. Lugo?
18   A    I did not.
19   Q    All right.  You also did not review any emails or texts
20   between Sanchez and Doe which may refute Doe's claims of
21   trafficking prior to writing your report; correct?
22   A    I did review emails.  I don't recall whether it was
23   before or after writing the reports, but I absolutely did
24   review emails.
25   Q    Okay.
```

12

Excerpt - Cross-examination of Kimberly Mehlman-Orozco by
Ms. Bardot

```
 1   A    And I did review the responses to interrogatories.  I
 2   don't know if it was an oversight, but I certainly did
 3   review them at some point.
 4   Q    Well, do you remember me asking you, during your
 5   deposition on July 18, 2022 at page 71, the very question
 6   I've just asked you:  "This sentencing memorandum refers to
 7   a number of text messages and emails between Sanchez and
 8   Doe, which Sanchez's claims refutes Doe's claims that she
 9   was part of a sex trafficking ring.  Have you reviewed
10   those?"  And you said you had not reviewed those.  Was your
11   testimony truthful when you gave it?
12   A    Of course it's truthful.  So then that suggests that I
13   reviewed it afterwards.  But I did review the emails.
14   Q    That wasn't my question.
15        My question was:  When you wrote your report,
16   would you agree that you hadn't read any of the emails
17   between Sanchez and Doe?
18   A    And my response is I didn't recall whether I had
19   reviewed it before or after drafting the report seven months
20   ago.
21   Q    All right.  And you claim that one of the reasons that
22   Doe was sort of frightened or stuck with Sanchez was because
23   she feared that Sanchez would reach out to her family, her
24   ex-husband, so forth, and tell them that she was involved in
25   prostitution; correct?
```

13

Excerpt - Cross-examination of Kimberly Mehlman-Orozco by
Ms. Bardot

```
 1    A     In part, yes.
 2    Q     Okay.  But you knew that, as of 2009, her husband had
 3    already accused her of prostitution; correct?
 4    A     I don't recall.
 5    Q     Do you remember testifying about this at your
 6    deposition where the media reports during the bitter divorce
 7    in 2009 reflected that her husband accused her of
 8    prostitution?
 9    A     I don't recall in 2009 to 2010 that obviously they were
10    in a very public and bitter divorce, and I don't recall
11    exactly what the allegations were that were going back and
12    forth, honestly.
13    Q     Have you ever spoken with her ex-husband?
14    A     No, ma'am, I have not.
15    Q     Have you ever read any of the declarations that he
16    provided in connection with the Sanchez criminal case?
17           MR. GLASBERG:  Excuse me.  Judge, I'm going to
18    object.  I've let it go for a while.  The witness is
19    introducing evidence into this case which she claims to be
20    evidence.  She could call Kiko Robles if she wants.  She
21    could depose Kiko Robles.  She could get information
22    about --
23           THE COURT:  I'm going to overrule it.  She's
24    simply asking what she reviewed and didn't review.
25           Go ahead.
```

14

Excerpt - Cross-examination of Kimberly Mehlman-Orozco by
Ms. Bardot

```
 1            MS. BARDOT:  That's all I'm asking.
 2   BY MS. BARDOT:
 3   Q    Did you read his declaration from the criminal case?
 4   A    I don't -- I don't recall.
 5   Q    Have you ever looked at a visa or a passport or any
 6   travel documents which would reflect dates when Doe came in
 7   or out of the United States?
 8   A    Those were not provided to me, so I did not review
 9   them.
10   Q    Did you search to determine whether you could find any
11   ads that may have been posted of Doe in the period prior to
12   2010 when she met Sanchez?
13   A    I did not have any information for which I could
14   search.
15   Q    What do you mean by that when you say you did not have
16   any information for which you could search?
17   A    So in searching for of the advertisements that were
18   published through Hazel Sanchez's operation, I started with
19   a seed of information before doing a snowball sample.  So,
20   essentially, I had some information that was tied to the
21   commercial sex operation, namely the email addresses that
22   were being used, according to the Government documents from
23   her prosecution, as well as her phone number.  And so it was
24   through that initial piece of information that was able to
25   do a snowball search finding all of the other advertisements
```
15

Excerpt - Cross-examination of Kimberly Mehlman-Orozco by
Ms. Bardot

1    that were posted using that same contact information.

2              My recollection is when I asked Jane Doe about her

3    contact information during the alleged trafficking period

4    and prior, I don't think she recalled what her number was,

5    or I don't remember having that information for which I

6    could search.

7    Q    Okay.  You did indicate when you searched, you did not

8    find any ads that were posted from 2012 onward that

9    reflected Doe; correct?

10   A    That is correct.  I did not find any that featured her

11   pseudonym or her photographs.

12   Q    And you were aware that Sanchez has asserted that she

13   did not have any affiliation with Doe after 2012; correct?

14   A    I am aware that Hazel Sanchez claims that she did not

15   sell anybody except for herself post 2012.

16   Q    Okay.  My question was specific to Doe.

17   A    And the answer is nobody besides herself, which -- and

18   "nobody" includes, obviously, Doe.

19   Q    When you were testifying earlier about 6 percent of the

20   funds were kept and so forth, that's completely speculative

21   on your part because you don't know how many times Doe went

22   in and out of the United States, how many customers were

23   actually seen each day, how much they paid, et cetera;

24   correct?

25   A    It wasn't speculative; it was based off of the

                                                              16

Excerpt - Cross-examination of Kimberly Mehlman-Orozco by
Ms. Bardot

```
 1   information that was provided to me.
 2   Q    Right.  Which wasn't any information about whether she
 3   was in the United States from, let's say December 10th, 2010
 4   to December 14th and then gone for three months.  You have
 5   no information on that; do you?
 6   A    On the number of times exactly, no, not definitively.
 7   Q    Or the number of days that she actually stayed in the
 8   United States when she was here; correct?
 9   A    I think the information that I had was that it was
10   several weeks at a time or several months at a time, but it
11   wasn't, you know, a few days.
12   Q    Well, that's based on what Doe told you; right?
13   A    I'm not sure.  So certainly, yes, that is her
14   self-report, but I don't recall whether that was in the
15   criminal -- any of the criminal documents related to
16   Ms. Sanchez's -- like, for example the sentencing
17   memorandum.
18   Q    And did you ask Doe to give you her passport or her
19   visa or her travel documents or anything which would have
20   allowed you to see when she was here and when she was not
21   and how long she stayed?
22   A    I don't recall exactly, but I believe I did ask for
23   that, and it wasn't available.
24   Q    Okay.  It wasn't available or was not provided to you?
25   A    My recollection is that she didn't have it or that she
```
                                                              17

Excerpt - Cross-examination of Kimberly Mehlman-Orozco by
Ms. Bardot

```
 1   wasn't clear on ...
 2   Q    Well, you know that she claims that when she escaped
 3   Sanchez -- allegedly escaped her in 2015, that she had her
 4   passport with her because Sanchez had not yet taken it, you
 5   know that; correct?
 6   A    That's not my recollection of what was provided to me.
 7   Q    Okay.  So if the plaintiff has provided that testimony,
 8   you don't know of that?
 9   A    That her passport --
10   Q    That she had it with her when she allegedly escaped
11   Sanchez.  You're not aware of that?
12   A    Just to be clear, you had initially said that it was
13   not taken from her until after her alleged trafficking
14   situation, which is not consistent with what I was told.
15   Q    I'm not sure you're understanding my question.
16        Are you aware that when Doe allegedly escaped
17   Sanchez in 2015, that she had her passport with her?
18   A    My recollection is that she did take her purse and some
19   documents or some possessions when she left.
20   Q    How about her passport?
21   A    I don't think I recall whether that was part of it or
22   not.  I honestly don't recall.
23   Q    So when you said the passport was unavailable, you
24   don't know if she possesses it or not, you just know you
25   don't have it?
```

18

Excerpt - Cross-examination of Kimberly Mehlman-Orozco by
Ms. Bardot

1    A    Correct.

2    Q    Okay.  When we were talking about some of these ads

3    that are at Exhibit 7, these are ads posted on various

4    websites, Live Escorts, et cetera; correct?

5                THE CSO:  Which binder?

6                MS. BARDOT:  I'm sorry.  This would be the

7    plaintiff's binder.

8                THE WITNESS:  And the question was these are --

9    BY MS. BARDOT:

10   Q    Right.  I was getting you there first.

11               So these ads that are Exhibit Number 7 are on

12   various websites, Live Escort Review, some other ads that I

13   think you pulled that were Backpage and Eros; correct?

14   A    So the websites -- so it has Erotic Monkey, Escort

15   Picture, Escort Women, Adult Look.

16   Q    And you would agree that voluntary commercial sex

17   workers used these websites, too; correct?

18   A    Yes, ma'am.

19   Q    Okay.  And so when you said that these ads are of

20   similar style, maybe suggestive then of trafficking, they're

21   also similar style suggestive of commercial sex work that's

22   voluntary; correct?

23   A    Well, the distinction between the two, which hopefully

24   I made pretty clear, is that typically independent sex

25   workers who are consenting adults are not in a network.  So

                                                              19

Excerpt - Cross-examination of Kimberly Mehlman-Orozco by
Ms. Bardot

```
 1    networks, the network style of these particular

 2    advertisements, is what makes them at risk of involving

 3    trafficking.

 4    Q    My question is this:  The way these are posted, meaning

 5    the way the women are positioned, the amount of undress or

 6    not undress, these are consistent with both sex trafficking

 7    and voluntary commercial sex work; correct?

 8    A    That is correct in the sense that there's nothing about

 9    the individual pictures; it's the totality of the

10    circumstances.  The totality of the information across the

11    advertisements that rises to the level of concern on

12    trafficking.

13    Q    Okay.  And when you did your research into ads that

14    pertained to Doe, she was listed as Diana; right?

15    A    That's correct.

16    Q    And in addition to finding ads which showed a number

17    that was the same as Hazel Sanchez's number, you also found

18    ads that had a separate phone number on them that did not

19    link to Hazel Sanchez's phone numbers; correct?

20    A    They did, through a snowball sample.  So as I had

21    mentioned, you start with a seed, which is the number that

22    was provided by the Government in her criminal

23    investigation.  Then you start with that number or that

24    email address, I think both were provided, and you look to

25    see what other ads are associated with them.
```

Stephanie Austin, RPR, CRR USDC/EDVA (571) 298-1649

Excerpt - Cross-examination of Kimberly Mehlman-Orozco by
Ms. Bardot

```
1              So when you're saying that there are phone numbers
2    that are not associated with her, but they are, because
3    based off of my snowball sample, that phone number, a
4    separate phone number, which was not provided to me, was
5    linked, for example, to her email address, or to an
6    advertisement that did contain her contact information that
7    was provided by the Government.
8              So it is through that snowball sample that it is
9    directly linked to the seed information that was provided
10   for Ms. Sanchez.
11   Q    Well, do you remember testifying at your deposition
12   about a -- an advertisement that you found for Doe dated
13   October 8, 2011 which had a phone number, (571) 577-2335,
14   which contained within it nothing else that said Andrea
15   Fairfax, Hazel Sanchez, anything else at all?
16   A    I don't recall that specific testimony.
17   Q    Okay.
18   A    However, with that being said, if it was an
19   advertisement --
20   Q    You've answered my question.  Thank you.
21   A    May I finish?
22   Q    No.  So that was my question.
23            THE COURT:  Mr. Glasberg can ask you to finish up.
24   BY MS. BARDOT:
25   Q    And when you interviewed Doe, she told you she did not
```
                                                            21

Excerpt - Cross-examination of Kimberly Mehlman-Orozco by
Ms. Bardot

1  recognize or recall meeting either Mr. Barbazette or

2  Mr. Mardocco; correct?

3  A     That is correct.

4  Q     Okay.

5         MS. BARDOT:  That's all I have.  Thank you.

6         (Excerpted proceedings adjourned at 5:39 p.m.)

7         ---------------------------------

8  I certify that the foregoing is a true and accurate

9  transcription of my stenographic notes.

10                        *Stephanie Austin*

11                        Stephanie M. Austin, RPR, CRR

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                          22